35 C.C.P.A.(Patents)

## In re SWITZER et al.

### Patent Appeals No. 5343.

Court of Customs and Patent Appeals.

Jan. 27, 1948.*

* This cause was originally decided by this court on January 27, 1948. Thereafter, counsel for appellant filed a petition for rehearing. The rehearing was granted April 2, 1948, solely for the purpose of permitting the court to revise certain language in its original decision to which counsel for appellant had directed the court's attention.

828

Pennie, Edmonds, Morton & Barrows, of Washington, D. C. (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 24 and 25 in appellants' application for a patent for "certain new and useful improvements in Preserving Caustic Soda from Contamination."

The claims in issue read as follows:

"24. A coating composition adapted to be applied to metal surfaces for service in the presence of caustic soda which comprises a relatively small proportion of carbon black, a relatively large proportion of polystyrene having a molecular weight ranging from about 50,000 to about 100,000, and a solvent for the polystyrene, the proportion of polystyrene present being several times the proportion of carbon black present, said composition being free from saponifiable material.

"25. A coating composition adapted to be applied to metal surfaces for service in the presence of caustic soda which consists of several parts of polystyrene having a molecular weight ranging from about 50,000 to about 200,000, about one part of carbon black a relatively small proportion of a plasticizer selected from the group consisting of diamyl naphthalene and chlorinated diphenyls, and a solvent for the polystyrene and the plasticizer."

The references are: British Patent 402,877, Dec. 14, 1933; Waldeck 2,111,342, Mar. 15, 1938; Stoesser et al. 2,166,557, July 18, 1939; Hempel 2,198,939, Apr. 30, 1940; Dittmar 2,211,689, Aug. 13, 1940; Allen 2,273,822, Feb. 24, 1942.

The claims hereinbefore recited are directed to a coating composition adapted to be applied to metal surfaces for service in the presence of caustic soda. Claims 9, 17, 18, and 19, directed to a method of preserving caustic soda in metallic containers from contamination with the metals of the containers, have been allowed.

Appellants concede that the limitations as to the molecular weight of the polystyrene that are specified in claims 24 and 25, ranging respectively from about 50,000 to about 100,000, and from about 50,000 to 200,000, are not such as to define a polystyrene that is in any sense a novel product per se.

Appellants further concede that various plastic materials including finely-divided solids have been known and used in the art as the essential film-forming ingredient in coating compositions of the general class here involved, and that such coating compositions when applied to metal containers have protected the metal against chemical attack "to a considerable extent."

Furthermore, the point, that the use of a chlorinated diphenyl as a plasticizer for the polystyrene is old in the art, is a point which "appellants herein always have freely conceded."

Appellants contend, however, that prior to the development of the respective coating compositions defined by the claims on appeal, no composition was known which when applied to metal containers would afford protection to the metal against hot concentrated caustic soda for a prolonged period of time.

Appellants allege that the ability of a coating composition to afford prolonged protection to the metal against chemical attack by hot highly concentrated caustic soda was obtained by them as the result of the incorporation of certain finely-divided solid materials in the polystyrene of the coating composition.

Appellants further allege that many of the finely-divided solid materials commonly used as fillers or pigments in the production of coating compositions cannot be used in their compositions, because such fillers or pigments react with caustic soda; and they discoverd that for some reason which they are still unable to explain, carbon black was substantially inert to caustic soda and was greatly superior to any other finely-divided solid material in a coating composition for the purpose of providing prolonged protection to metal containers.

Appellants contend that the incorporation of carbon black in the essential film-forming ingredient of their coating composition has resulted in the patentable subject matter defined by the appealed claims.

Claim 24 defines a composition which comprises (1) a relatively small proportion of carbon black, (2) a relatively large proportion of polystyrene, and (3) a solvent for the polystyrene. The claim includes the additional limitation that the composition be free from saponifiable material.

Claim 25 defines a composition which consists of (1) several parts of polystyrene, (2) one part of carbon black, (3) a plasticizer selected from the group consisting of diamyl naphthalene and chlorinated diphenyls, and (4) a solvent for the polystyrene and the plasticizer.

Appellants have confined their appeal herein to a review of the ground upon which product claims 24 and 25 were rejected, but it is necessary to consider also the ground upon which the board rejected certain closely related claims that were not appealed to this court.

In fact, the subject matter of the claims for the composition is so closely related to the subject matter of the claims for the method that the tribunals of the Patent Office in rejecting certain of appellants' claims for method did not wholly differentiate between the ground upon which those claims were rejected and the ground upon which they rejected appellants' claims 24 and 25 for the composition.

The subject matter was described generally by the examiner as follows: "The invention relates to a process of coating metallic containers with resinous compositions which are resistant to caustic alkali. The composition comprises a relative large proportion of polystyrene having a molecular weight of at least 50,000 and a relative small proportion of finely divided solid which is normally a pigment. The solid is preferably carbon black or titanium dioxide. Also incorporated in the resinous composition may be a plasticizer such as chlorinated diphenyl."

In the appeal from the action of the examiner in finally rejecting appellants' claims 20 to 25, inclusive, the Board of Appeals recited method claim 20, which was not appealed to this court, as illustrative of the subject matter of all such claims, and stated: "Appellants found that prior art metal coatings would not be effective against hot caustic soda at 210°F. or in excess of 140° F. and their invention is said to remove this defect due to the use in their composition of a small amount of pigment or finely divided solid (titanium dioxide or carbon). Reference is made to the molecular weight of the polymer but in view of the broad terminology employed in the claims in referring to the molecular weight, it seems that they are intended to cover the usual prior art polymers providing that they contain sufficient pigment."

Certain of the comments quoted from the decisions of the examiner and the board seemingly were occasioned by the following from the specification:

· "* * * A number of such coatings have been proposed, but so far as we are aware none of these coatings is durable

under severe conditions of use such as encountered in storage or shipment of very strong caustic soda solutions at high temperatures, say in excess of 140°F. Thus, in so far as we are aware none of the coating materials proposed heretofore will withstand the action of 70–75% NaOH solutions at temperatures of the order of 210°F. * * *

"As a result of our investigations, we have discoverd a method * * * which involves coating the metal surfaces of the containers with a mixture containing a relatively high proportion of polystyrene and a relatively small proportion of a finely-divided solid that is substantially inert to caustic soda. Preferably, the finely-divided solid is a pigment, and several pigments that are substantially inert with respect to caustic soda may be employed, among them, titanium dioxide and carbon black."

The British patent, issued to the Celluloid Corporation of New Jersey, so far as pertinent, relates to articles made of cellulose and more particularly to articles of this character having a high resistance to chemical reagents. The patent discloses that polystyrene is of especial value when used in a coating composition for improving chemical resistance to acid or alkali.

The board held that while the British patent does not disclose that the pigments should be finely divided, it is a matter of common knowledge that they are finely divided, and that such knowledge applied to the carbon black of claim 24.

The patent to Waldeck relates to a coating composition which readily adheres to the surfaces of metals used in the manufacture of apparatus for storing or shipping concentrated caustic solutions to form films "which are highly resistant to the caustic even for relatively long periods of time." Ethyl cellulose may be employed, and the composition may be modified by the incorporation of suitable plasticizers and pigments.

The patent to Stoesser et al. discloses a coating composition, comprising a solvent and polystyrene plasticized with an ester, useful for the protection of metallic surfaces. The polystyrene lacquers may be modified by incorporating therein pigments,

fillers, and other plasticizers. The plasticized polystyrene provides a strongly adherent protective finish for the metal. The finish is resistant to corrosion and substantially impervious to aqueous solutions of electrolytes. It exhibits little or no tendency to check or crack. In their composition the patentees prefer to utilize a polystyrene made in a particular way, but other forms of polymerized styrene may also be utilized. They do not mention that the composition contains carbon black.

The patent to Hempel relates to a synthetic resinous coating which may be utilized for the protection at the corner or edges or a surface of metal surfaces against severe corrosion, provided an inert filler is included within the resin in sufficient proportions. The resin is dissolved in an appropriate solvent and from 10% to 45% by volume of the resin; and preferably from 25% to 35% of an inert, very finely-divided pigment or filler is incorporated therewith. Titanium dioxide is specified as one of such suitable inert fillers. The ratio of pigments by weight to the resin will vary considerably, depending upon the specific gravity of the various pigments employed. Titanium dioxide is employed in a ratio of approximately 42 parts by weight of the pigment to 43 parts of the resin solution.

Hempel states that when the pigment is employed in sufficient proportions, the composition will thoroughly protect the corners of the metallic surface; and says, "Just why the pigments provide extra protection, is not thoroughly understood."

The patent to Hempel contains claims both for the process and for the composition. One of the latter claims reads: "5. A metal object having at least one surface and an adjacent edge coated with a smooth, adherent, impermeable, highly corrosion resistant coating produced by the process of claim 1."

Of the secondary references, the only one that need be considered, in view of the state of the record, is the patent to Dittmar, which, so far as pertinent, discloses that it is old in the art to employ a plasticizer such as chlorinated diphenyl in a styrene resin coating composition.

The examiner rejected claim 24 on the ground that the subject matter thereof involved no invention over the disclosure of the patent to Stoesser et al. in view of the disclosure of the patent to Hempel. The examiner rejected the claim on the further grounds that the claim contained a negative limitation, and that "Since carbon black is a well known filler, its incorporation in any resin coating composition is believed to involve nothing more than choice and experimentation and not invention."

In the rejection of claim 25 it was indicated that the claim merely adds the plasticizer to claim 24. In rejecting claim 25 the examiner held the patent to Dittmar disclosed that appellants' plasticizers for styrene were old in the art, "and it is, therefore, apparent that the incorporation of such plasticizer in any polystyrene resin would involve no invention."

The decision of the examiner was affirmed by the Board of Appeals.

It is true, as appellants contend, that no single reference discloses the composition defined by the claims on appeal and that there is no disclosure in any cited patent of a composition containing carbon black.

However, the patent to Hempel clearly discloses that it is old in the art to employ titanium dioixde as an inert filler or pigment in the composition. That material, by the terms of appellants' own specification, is equivalent to the carbon black of the appealed claims. Accordingly, the claims limited to carbon black do not thereby define patentable subject matter. In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823.

In view of the pertinent and obvious disclosures of the prior art of record, together with the admissions made by appellants, as hereinbefore set forth, and also in view of appellants' failure to controvert the statement made by the tribunals of the Patent Office that carbon black is a well-know filler or pigment, we conclude that the appealed claims define no subject matter inventive or patentable over such art. See In re Williford, 158 F.2d 997, 34 C.C.P.A., Patents, 812; In re Stover, supra.

In view of our conclusion it would serve no useful purpose in this opinion to discuss all the points advanced by appellants, to each of which we have given extensive and considerate attention.

Appellants filed an affidavit under rule 75 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A. Appendix, to remove the patent to Hempel from consideration as a valid reference.

The examiner correctly held that the affidavit did not antedate or avoid the three abandoned applications which were referred to in the Hempel patent as co-pending applications of which the patent application was a continuation-in-part. Those earlier applications are part of the record herein and two of them disclose the use of the titanium dioxide just as the patent does.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, J., sat during the argument of this case, but resigned before the opinion was prepared.