43 C.C.P.A. (Patents).

**Matter of the Application of Nathan LA VERNE and Albert A. LaVerne.**

**Patent Appeal No. 6166.**

United States Court of Customs and Patent Appeals.

Jan. 20, 1956.

Caesar & Rivise and Max R. Millman, Philadelphia, Pa. (A. D. Caesar, Philadelphia, Pa., of counsel), for appellants.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable claims 26 to 37, inclusive, the only remaining claims in appellants' application for a patent entitled "Art of Decorating Preformed Articles."

The alleged invention, as defined in the claims, relates to both a method of and an apparatus for applying a design of thermo-fluid paint to a desired surface by means of an offset printing procedure. The offset process, which is admittedly old in the art, consists of transferring paint in a particular design from a decorating member, such as a roller, to an offset surface, such as a roller made of rubber, and in turn bringing the offset surface into contact with the surface of the article to be decorated whereby the design is transferred to the latter. Appellants' alleged patentable improvement to the offset printing process, in its broadest aspect, consists of applying a "lubricant" to the offset surface prior to transferring the decorative coating thereto. Some of the various substances which are described in the specification as "lubricants" are iso-butyl acetate, iso-propyl alcohol, methyl ethyl ketone, diethyl ketone, nitromethane, and petroleum naphthas of relatively low boiling point. It is stated in the specification that "the lubricants should be of such a nature and/or applied in such small quantity as not to affect deleteriously the yieldable offset surface and not appreciably impair the attraction or affinity of

the surface for the paint." It is also stated in the specification that the film of "lubricant" serves two functions, the first being that it facilitates the transfer of the coating composition or the paint from the decorating member to the offset surface so that the full thickness of decoration is produced on the offset surface, and the second being that it facilitates the subsequent transfer of the decorative film from the offset surface to the work in that it acts as a peeling or stripping layer. It is to be noted that the claims on appeal recite that the process and apparatus are used with thermo-fluid paints. However, in the specification it is stated, " * * * the use of lubricants renders it possible to employ thermo-fluid paints in an offset process. The use of such paints is preferred * * *. However practice of the invention is not restricted to the use of any particular kind or type of paint. It is possible to utilize any one or more of a large number of kinds and types of compositions, without sacrificing the advantages attributable to the use of lubricants."

It is not deemed necessary at the present time to describe the apparatus of the alleged invention in specific detail. This description will be given hereafter at appropriate portions of the opinion in conjunction with the discussion of the features of various claims. The board considered claims 26 and 33 to be representative of those appealed, and so do we.

"26. In the method of decorating an article which comprises the steps of applying a film a thermo-fluid paint in the configuration of a predetermined design to an offset surface, and then pressing the article against said surface to transfer the design to the surface of the article, the improvement which consists in applying a lubricant to the offset surface, drying the offset surface to remove excess lubricant so that a relatively thin moist film thereof remains on the offset surface at the time of application of the film of thermo-fluid paint which does not impede the transfer of the design to the offset surface, said lubricant never attacking said offset surface.

"33. An apparatus for decorating articles which comprises a rotatable offset cylinder, means for applying a lubricant to the surface of the cylinder as it rotates, means for drying the lubricant until a relatively thin moist film remains on the surface, means for applying a film of molten thermo-fluid paint on said lubricant-coated surface in the configuration of a predetermined design while the lubricant remains moist and does not impede the transfer of the paint to the surface, said lubricant never attacking said surface, and means for presenting the article to be decorated to said offset cylinder and pressing said article against the surface thereof to transfer the predetermined design to the article."

The references relied on are: Ormond 2,243,486 May 27, 1941; DeSperati 1,528,660 Mar. 3, 1925; Luehrs 2,499,870 Mar. 7, 1950; Meyercord 1,989,375 Jan. 29, 1935; Canadian Chemistry and Metallurgy, December, 1925, Page 265, Article entitled "Organophile Colloids"; Journal of the Society of Chemical Industry, May 16, 1930, Page 226T, Article entitled "Solvents and Swelling Agents for Organophilic Colloids".

The DeSperati patent was considered to be cumulative by the board. It is therefore not necessary to consider it.

The Ormond patent relates to a method of color printing which uses an offset procedure. It is stated in the specification that "Increasing the body of the ink tends to cause faulty separation of the ink from the plate on to a blanket surface and to interfere with proper transfer of the ink from the blanket to the surface to be printed upon." The Ormond patent teaches how to minimize this difficulty by forming "an ink trapping medium or film on the surface of a given printing member." It is to be noted that the surface is composed of rub-

ber. It is specifically stated in the patent, "The film acts as a carrier for attracting and retaining inks, and also as a separating agent for allowing the ink to be readily separated from the printing member and applied to some other surface." Certain organic materials which attack rubber, such as gasoline or a mixture of fuel oil, gasoline, and xylol, are suggested in the patent as being suitable for forming such a film. It is further stated in Ormond that the aforementioned treatment of a surface may also be extended to ink films themselves, presumably where a plurality of ink films are used.

The Meyercord patent relates to a printing press, and utilizes air nozzles to cool an ink-carrying belt where it is necessary to cool the ink which is being used in order to regulate its viscosity. This patent also discloses that reservoirs which hold the printing fluid can be cooled by circulating cooling fluid through conduits contained in the reservoirs.

The Luehrs patent discloses a rotary offset printing press wherein a plurality of ink applying cylinders each apply a complementary portion of a design to an offset cylinder which in turn applies the design to a web.

The above-cited publications were used for showing that some of the materials which were cited in appellants' specification for use as a "lubricant" either swell or dissolve rubber, and thus attack rubber.

The Board of Appeals affirmed the rejection of the claims for substantially the same reasons given by the examiner. The board sustained the rejection of claims 26, 27, and 28 on Ormond. The examiner stated, in essence, that the problem of transferring quick congealing thermo-fluid paint was not substantially different from the problem of transferring a thick quick-drying ink of the kind employed by Ormond, and since Ormond's solution of the problem was essentially the same as appellants', the claims did not define a patentable invention over the method of the Ormond patent. The examiner was also of the opinion that the limitation in the claims was not patentable which related to the removing of excess lubricant by drying so that a relatively thin moist film remained on the offset surface. In this respect the examiner stated that if the amount of lubricant on appellants' offset surface must be controlled within certain limits, a similar control must be employed in the Ormond process. In answer to appellants' objections relative to the pertinence of the Ormond patent as a reference because it employs organic materials which attack rubber whereas the present claims specify that the lubricant should be applied in such a manner so as not to attack the rubber offset roller, the board stated, "We agree with the examiner that no reason is seen why repeated application of appellants' lubricants which are rubber solvents will not affect the rubber offset surface if Ormond's gasoline will."

The primary issue on appeal is whether appellants' process, as defined in the claims, is patentable over the Ormond patent. This, for the most part, can be decided by analyzing the features of claim 26, in the light of applicable law.

It was stated long ago "that the application of an old process or machine to a similar or analogous subject, with no change in the manner of application, and no result substantially distinct in its nature, will not sustain a patent, even if the new form of result has not before been contemplated." Pennsylvania Railroad v. Locomotive Engine Safety Truck Co., 1883, 110 U.S. 490, 494, 4 S.Ct. 220, 222, 28 L.Ed. 222. Ansonia Brass & Copper Co. v. Electrical Supply Co., 1891, 144 U.S. 11, 18, 12 S.Ct. 601, 36 L.Ed. 327. It has also been held that a patentee is entitled to every use for which his invention is susceptible whether such use be known or unknown to him; but this does not negate the possibility of there being invention in the use of an old device which has been modified when it is applied to a remote and non-analogous art. Potts v. Creager, 1894, 155 U.S. 597, 606, 15 S.Ct. 194, 39 L.Ed. 275.

In the light of the foregoing law, we must consider whether there is invention involved in appellants' use of Ormond's process for applying thermo-fluid paints, substantially the same process having been disclosed by the patentee for use with heavy-bodied inks. Appellants contend that thermo-fluid paints were known in 1940 when Ormond applied for his patent, yet Ormond made no mention of their possible use in his process. Since a patentee is entitled to every use for which his invention is susceptible, whether such use be known or unknown to him, Potts v. Creager, supra, it is immaterial that Ormond did not mention the use of thermo-fluid paints in his patent, the patentee's entitlement to every use for which his invention is susceptible effectively precluding the granting of another patent where a new material is used in an old process when the use of the new material does not constitute invention. It is our opinion that the use of thermo-fluid paints by appellants in the Ormond process does not constitute invention since the Ormond process is merely being utilized by appellants with an analogous material in the same art for which the process was developed. Furthermore, a comparison of the mode of operation of appellants' process with the Ormond process indicates that the "lubricant" was recognized to perform the same function and give the same result in both instances. In short, although Ormond's old process had not been contemplated for use with thermo-fluid paints, it is being applied to a similar or analogous subject, with but a slight change in the manner of application, and the result obtained by appellants is substantially the same as the results obtained by Ormond. Therefore, in view of the law set forth in the quoted statement from Pennsylvania Railroad v. Locomotive Engine Safety Truck Co., supra, we are of the opinion that there is no invention present in appellants' claims 26, 27, and 28.

There is another reason why we are of the opinion that it was proper to reject appellants' claims, which recite the use of thermo-fluid paint, on the Ormond patent, which uses substantially the same process for applying heavy inks. In the specification of the application, it is stated, " * * * the use of lubricants renders it possible to employ thermo fluid paints in an offset process. The use of such paints is preferred * *. However, practice of the invention is not restricted to the use of any particular kind or type of paint. It is possible to utilize any one or more of a large number of kinds and types of compositions, without sacrificing the advantages attributable to the use of lubricants." Thus it would appear that the inventors themselves regarded thermo-fluid paints and other types of printing compositions as substantial equivalents insofar as the process was concerned, and that there was nothing critical in the use of thermo-fluid paints in the process. This being the case, we are in agreement with the Patent Office tribunals that the recitation in the claims relative to the use of thermo-fluid paints does not render them patentable over Ormond who uses heavy ink, it being well settled that where the disclosure of an application gives two materials as equivalents, such disclosure alone may be sufficient to sustain a rejection of a claim specific to one equivalent where the other appears in the prior art, In re Switzer, 166 F.2d 827, 35 C.C. P.A.; Patents, 1013, because the applicants are not in a favorable position to argue that invention lies in the use of the claimed equivalent, In re Lindberg, 194 F.2d 732, 39 C.C.P.A., Patents, 866.

In reaching the conclusion that the claims are unpatentable, we are not unmindful of the fact that appellants in effect urge that their claims differ from Ormond in that the latter merely discloses the use of a film of "lubricant" whereas the claims under consideration specify that a "relatively thin moist film [of 'lubricant'] remains on the offset surface at the time of application of the film of thermo-fluid paint." Giving the appellants the benefit of the doubt, and assuming that there is a difference between a "film" and a "relatively thin film," we are still of the opinion that

since there is no new and unexpected result flowing from this difference, thus rendering this difference non-inventive, a recitation in a claim calling for such a difference which is not shown in the prior art does not make the claim patentable over the prior art. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982.

■ Appellants raise another objection to the use of Ormond as a reference, namely, that Ormond teaches the use of a substance as a "lubricant" which will attack rubber, whereas appellants' disclosure states that the lubricant must be applied in such a manner as not to attack the rubber offset roller. It appears to us that when Ormond states that his "lubricant" attacks rubber, he is merely describing the characteristic of the lubricant; he is *not* stating that the lubricant must deleteriously attack the rubber offset roller during the actual printing process, as appellants would have us believe. In fact, the only difference between appellants' and Ormond's processes in this respect is that the former use a "relatively thin film" of "lubricant," whereas the latter uses a film of a "lubricant" which has similar characteristics, as discussed above. Therefore, since there is nothing in the Ormond disclosure which states that the rubber offset roller is deleteriously attacked during the printing process, we believe that appellants' inference that this condition exists sets forth too speculative an argument on which to predicate patentability. However, assuming *arguendo,* that Ormond's film of lubricant does attack the rubber during the printing process more than appellants' relatively thin film does, and that appellants' procedure therefore constitutes an improvement over Ormond, we are still of the opinion that no invention is present in appellants' claims since it is, in our opinion, within the realm of mechanical skill to modify Ormond's process to overcome this difficulty by using an optimum amount of "lubricant" to obtain optimum results from Ormond's process. It is well settled that improvements which are within the realm of mechanical skill do not justify patent protection. In re Jannell, 120 F.2d 1012, 28 C.C.P.A., Patents, 1262.

The rejection of claim 29 was sustained by the board as being unpatentable over Ormond in view of Meyercord. This method claim sets forth an additional limitation that the printing plate is heated. The board stated that although thermo-fluid paint has a tendency to congeal when it contacts a cold surface, it seemed obvious to maintain the thermo-fluid paint in a fluid condition by the use of heat in view of the fact that Meyercord showed the broad idea of using temperature control means for controlling the viscosity of an ink during printing to be old.

The rejection of claim 30 on Ormond in view of Luehrs was sustained by the board for the reason that no invention would be involved in using the Ormond method in applying different portions of a design to a common transfer roller which transfers the composite design to the surface to be decorated, this being taught by Luehrs. Claims 31 and 35 were rejected on the same references but for different reasons, and appellants in attempting to overcome this rejection have confined their argument to the alleged deficiencies of Ormond alone. Consequently, it must be assumed that the combination of reference meets the claims since Ormond does not have the deficiencies attributed to it by appellants.

The board sustained the rejection of claims 32 and 36 as being unpatentable over Ormond in view of Meyercord. These claims call for controlling the temperature of the thermo-fluid ink on the offset surface by blowing hot air and then cold air against the offset roller. It was reasoned by the examiner that since Meyercord teaches the use of cold air jets to control the temperature of an offset surface and thereby control the viscosity of ink in a printing process, it would be obvious, and therefore no invention, to supply both hot and cold air in proper proportions if accurate temperature adjustment was necessary.

Claims 33, 34, and 37, which are drawn to apparatus for performing the method recited in claims 26, 27, 28, and 29, were rejected as being unpatentable over Ormond in view of Luehrs or Meyercord for the reason that it would be no invention to practice Ormond's method on conventional offset printing presses such as shown by Luehrs or Meyercord by providing the secondary references with conventional means to apply Ormond's lubricant film to the offset surface. It was further stated that it would be within the realm of mechanical skill to control the film of volatile lubricant by drying off the excess and to provide heaters or air jets to control the viscosity of the paint.

It is our opinion that the foregoing rejections of claims 29 through 37, for the reasons set forth by both the examiner and the board, are sound. It is well settled that references can be combined to anticipate claims, In re Delancey, 177 F.2d 377, 37 C.C.P.A., Patents, 760, where they suggest doing the thing which an applicant has done, In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939. There is no question but that all the references are from the same art, and are concerned with subject matter which is very closely related to appellants' disclosure. Therefore, we believe that it would not involve invention in the present case to appropriate the various features and ideas of the prior art, and utilize them in the manner disclosed by appellants, this in essence being the holding of the board.

As was recognized by both the examiner and the board, the secondary references do not exactly teach the identical structure of certain of the apparatus claims or steps recited in the method claims which are used for controlling the viscosity of the coating composition and for applying the "lubricant" film. However, it is our belief that the board was correct in its conclusion that appellants' modifications of the teachings of the prior art constituted nothing more than mechanical skill and therefore did not involve invention. It is well settled

that claims may be properly rejected upon a combination of references even though that combination does not show all the elements defined in the claims if those limitations which are not shown in the prior art do not make the claims patentable over the disclosures of the prior art. In re Oakes, 140 F.2d 669, 31 C.C.P.A., Patents, 833.

For the foregoing reasons, the decision appealed from is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.