Affirmed.

29 C.C.P.A.(Patents)

**In re TAUB et al.**

**Patent Appeal No. 4532.**

Court of Customs and Patent Appeals.

Feb. 24, 1942.

Potter, Pierce & Scheffler, of Washington, D. C. (John S. Lachowicz and Richard L. Scheffler, both of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting, for want of invention over the prior art, all of the claims, 2 to 5, inclusive, and 7 to 17, inclusive, of an application for an alleged invention for "Quaternary Ammonium Compounds".

Appellants moved in this court to dismiss the appeal as to all of the rejected claims, except claims 14 and 15, which motion will be granted.

Claims 14 and 15 read as follows:

"14. Dimethyl-dichlorobenzyl-dodecyl-ammonium halides.

"15. Dimethyl-3.4-dichlorobenzyl-dodecyl-ammonium-chloride."

The references cited are: French patent 782,930, March 25, 1935; Piggott, 2,075,958, April 6, 1937; Domagk, 2,108,765, February 15, 1938.

Since the French patent substantially duplicates the domestic Domagk patent and was cited only because of its earlier publication date, it will not be necessary to consider it.

A description of the alleged invention, admitted by counsel for appellants to be correct, appears in the statement of the examiner as follows: "The invention relates to quaternary ammonium compounds containing attached to the nitrogen atom at least one aliphatically bound halobenzene radical (halo-benzyl, etc.) and one high molecular aliphatic hydrocarbon radical of from 8 to 18 carbon atoms, the remaining valences of the quaternary nitrogen atom being taken up by lower alkyl, lower

alkenyl or lower alkylene radicals and an anion of the group consisting of mineral acid, carboxylic acid and hydroxyl anions. These compounds are particularly useful as bactericides and fungicides. The essential groups which impart the properties of particular value in the claimed compounds are the aliphatically bound halo-benzend groups (halo-benzyl, etc.) and the long chain aliphatic hydrocarbon radical of from 8 to 18 carbon atoms."

The Domagk and Piggott patents each disclose quaternary ammonium compounds. The specification of the Domagk patent contains the following statements:

"I have found that quaternary ammonium compounds display considerable bactericidal and fungicidal properties if they contain at least one higher molecular aliphatically bound hydrocarbon radical as substituent of the nitrogen atom.

\* \* \* \* \*

"The higher molecular aliphatically bound hydrocarbon radical referred to above contains eight or more carbon atoms and may contain further substituents, such as halogen atoms, \* \* \*.

\* \* \* \* \*

" \* \* \* Preferably thos quaternary ammonium compounds in which the higher molecular aliphatic hydrocarbon radical contains from 8 to 18 carbon atoms are used for preserving and disinfecting purposes. Advantageously they contain as a further substituent an aliphatically bound phenyl group."

The patent to Piggott discloses benzyl-dimethyl-hexadecyl-ammonium chloride. Piggott does not state in his patent that his compounds have bactericidal and fungicidal properties. He states that his products are valuable "in processes for the treatment of textile fabrics".

The only difference between the compounds defined in the appealed claims from those disclosed in the prior art is in one of the four organic radicals. This difference is undisputed. As stated by appellants in their brief: "The question presented in this appeal is whether there is invention in the substitution of a chlorinated benzyl radical for the benzyl, the nitro-benzyl and the sulfo-benzyl radicals in the prior art compounds."

The Primary Examiner, although he admitted that appellants' specific compounds may be novel, held they did not involve invention, stating that: " \* \* \* There is no invention seen in substituting in the benzene ring of the benzyl ammonium compounds of the prior art a halogen atom to obtain a compound which still has the same bactericidal and fungicidal properties, even though these properties may be enhanced (which has *not* been proved). The results obtained by applicants differ only in degree and not in kind. Domagk does disclose a benzyl ammonium compound which is substituted in the benzene ring by a nitro ($NO^2$) group (Page 1, column 1, lines 39–40) and which has the claimed properties. There is no invention seen in replacing the ring nitro group by a ring chloro group to obtain a compound still having the same properties. Nitro and chloro ring substituents are considered to be equivalents in a molecule of the size claimed, in the absence of a showing or unexpected properties in the chloro product. It is to be particularly noted that Domagk does disclose that 'The higher aliphatically bound hydrocarbon radical \* \* \* may contain further substituents, such as *halogen* atoms' (italic added). Applicants argue that, from the Domagk patent it is apparent that the higher alkyl radical is the radical which gives the compounds its bactericidal and fungicidal properties. This may or may not be true, and is unimportant; whether true or not, Domagk does disclose that the long chain ammonium compound containing benzyl (and nitro substituted benzyl) radicals do have the bactericidal and fungicidal properties upon which properties applicants' invention depends. It is to be noted that Domagk states (Page 1, column 2, lines 5, 6, and 7), 'Advantageously they contain as a further substituent an aliphatically bound phenyl group' (italic added)."

After appeal had been taken to the Board of Appeals, two affidavits were filed, alleged by appellants to indicate that the claimed compounds are patentable over the prior art and the application was remanded to the Primary Examiner for reconsideration.

The examiner in his supplemental statement, after having given due consideration to the affidavits, adhered to his former rejection. He admitted that one of the affidavits shows the claimed compounds to have a greater disinfecting power, but of the same kind, than the compounds of the prior art, but held the difference to be of degree only and not of kind and hence not unexpected and expressing no invention over the prior art.

With respect to that affidavit, the examiner also stated:

"Further, it is to be noted that Domagk discloses a *nitro* benzyl substituted ammonium compound and that the claimed compounds have been rejected on the ground that there is no invention seen in substituting the nitro group by a halogen. The Gottsacker affidavit compares the claimed halo-benzyl compounds with *unsubstituted* (on the ring) benzyl compounds.

"It is, in addition, particularly pointed out that Domagk discloses (page 1, 1st column, lines 12 to 15) 'The higher molecular aliphatically bound *hydrocarbon* radical * * * may contain, further substituents such as *halogen* atoms * * *' (italic added). The disclosure of benzyl radicals and nitrobenzyl radicals, coupled with the statement (page 1, column 2, lines 1 to 7) that 'advantageously they contain as a further substituent an aliphatically bound phenyl group' and the above statement clearly points out that Domagk contemplated such compounds as the claimed halobenzyl ammonium salts."

The examiner disposed of the other affidavit in the following language: "The Schleicher affidavit shows that the stimulus value of the claimed compounds and those of the prior art is about the same, which property is not seen to be unexpected. The increase of irritation resulting from the halogenation of benzyl ammonium hydrochloride is not seen to be a criterion, since the claimed compounds are long chain alkyl di-lower alkyl substituted benzyl ammonium salts, which compounds, due, at least in part, to the presence of the long chain alkyl group have particular properties not exhibited by the unsubstituted benzyl ammonium salts. In fact it is these properties upon which applicants base patentability of the claimed compounds. It is to be noted that the claims point out that the presence of a long chain (8 to 18 carbon atoms) alkyl group is an essential feature of the claimed compounds. Hence the comparison of the reactions of *unsubstituted* benzyl ammonium compounds is not seen to be analogous."

The Board of Appeals, while it generally affirmed the reasons for rejection of the claims by the Primary Examiner, discussed only the sulfo-benzyl and nitro-benzyl compounds of the prior art.

In the brief of the Solicitor for the Patent Office it is admitted that a statement appearing in the decision of the board misinterpreted a portion of appellants' specification. That statement is as follows: "It appears from page 2 of the specification that it is not highly critical whether the added radical in the benzyl group be halogen or some other radical. It is only stated that it is preferable that it be of halogen."

It is contended, however, in said brief that the admitted error is not a ground for reversing the board's decision in view of the context, which reads immediately following the misinterpreted portion as follows: " * * * In view of this non-critical situation and *even in general,* it seems that substitution of one or another radical in that particular relation becomes only a matter of choice so far as representing any chemical compounds are involved. [Italics added.]"

It is our opinion that the italicized words "even in general" are sufficient for us to hold the admitted error to be harmless.

We think that the tests outlined in the affidavits were insufficient for a proper comparison between the properties of the compounds defined in the appealed claims and those of the prior art for the reason that the tests were not made of the compounds of the prior art comprising the disclosed substituents of the differing fourth organic radical. It was upon the disclosure of the substituents in the prior art that the rejection of the examiner was based.

Appellants evidently did not think the said tests were sufficient, possibly in the light of the decisions below, for they sought in their brief for the first time to supply the deficiency by a recital of experiments alleged to exemplify that their dichlorobenzyl dodecyl compounds are between two and two and one-half times as powerful as the nitro-dodecyl compound of the prior art.

It may be that the later experiments might have been held to be sufficient if they had been presented to the tribunals of the Patent Office to establish appellants' contention that their compounds should be held to be patentable over the prior art. But obviously they cannot be considered here.

Appellants had the right under rule 76, Rules of Practice of the Patent Office, 35 U.S.C.A. Appendix, to controvert by affidavit the conclusion of the Primary Examiner that nitro and chloro rings are equivalent substituents. They contend that there is no evidence to support this "bald assertion of equivalency". The burden was upon ap-

pellants to show that the said substituents are not equivalents. This they did not do. In re Hartung, 121 F.2d 529, 28 C.C.P.A., Patents, 1364.

In our opinion no reversible error appears.

The appellants' motion to dismiss the appeal as to claims 2 to 5, inclusive, 7 to 13, inclusive, and 16 and 17 is granted, and the decision of the Board of Appeals affirming that of the Primary Examiner rejecting claims 14 and 15 is affirmed.

Affirmed.