51 CCPA
**Application of Josef FRIED and Josef E. Herz.**
**Patent Appeal No. 7065.**

United States Court of Customs and Patent Appeals.
March 26, 1964.

William H. Saltzman (Robert Alpher, New York City, and Merle J. Smith, Scotch Plains, N. J., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and AL-MOND, Judges.

WORLEY, Chief Judge.

Fried and Herz appeal from the Board of Appeals' affirmance of the examiner's rejection of claims 6, 20 and 21, the remaining claims of their application.[1]

The invention relates to steroids of the pregnene series. The claims in dispute are directed to unsaturated pregnene steroids having a 9,11 epoxy group and an alkylsulfonoxy or iodo group in the 21 position.

Claim 6 reads:

"6. 21–Iodo– $\Delta$ ⁴–pregnene–9β, 11β–oxido–17α–ol–3,20–dione."

The steroids being claimed may be depicted by the structural formula:

wherein Y is lower alkylsulfonoxy and iodo, Z is hydrogen and alpha hydroxy and either the 1,2, the 4,5, the 1,2 and 4,5, or the 4,5, and 6,7 positions are unsaturated. The symbols $\Delta^1$, $\Delta^4$, $\Delta^{1,4}$ and $\Delta^{4,6}$ correspond to unsaturation in the aforesaid positions, respectively.

Claims 20 and 21 are generic. Claim 20 is directed to the alkylsulfonoxy derivatives of pregnene which serve as intermediates for the preparation of the corresponding iodo compounds, which are the subject matter of claim 21. The latter are said to be useful as intermediates in the preparation of other steroids which are physiologically active.

The board held that claims 20 and 21 were unsupported by the specification in that the preparation of all of the starting materials was not disclosed; and also

1. Serial No. 521,915, filed July 13, 1955.

held that the compounds of claims 6 and 21 were unpatentable in view of a patent to Nathan et al., 2,884,429, April 28, 1959.

Regarding the first holding, the specification as filed contained a reference to two copending applications [2] for the purpose of disclosing how to convert pregnenes unsubstituted in the 21 position,[3] having a 9β, 11β–oxido substituent, to physiologically-active 9β–halo 11β–hydroxy derivatives. When first confronted with a rejection based on insufficient disclosure of the preparation of the starting materials for the $\Delta^1$–, $\Delta^{1,4}$, and $\Delta^{4,6}$ steroids, appellants made the following amendment to the specification:

"[The $\Delta^1$–, $\Delta^{1,4}$–and $\Delta^{4,6}$–steroid reactants can be prepared as disclosed in the applications of Josef Fried, Serial Nos. 489,769 and 515,917, filed February 21, 1955, and June 24, 1955, respectively.]"

That amendment was entered by the examiner but he continued the rejection on the ground that

" * * * Applicants may not rely upon copending applications having different inventorship for the purpose of completing the disclosure, M.P.E.P. 608.01(p)."

The board sustained that rejection,[4] but for a somewhat different reason. In the board's view the reference to Serial No. 489,769 in the specification as filed, for a limited purpose, as described above, even if sufficient to incorporate other portions of the copending application for other purposes [5]

" * * * would still not avail appellants since that application, as stated by the Examiner, does not disclose the preparation of all the starting materials required for the compounds recited in these claims."

On reconsideration the board said that it was "not called upon to rule on" the question of whether the reference to Serial No. 489,769 "in the application as filed, for a different purpose than that of disclosing the starting materials is sufficient to incorporate the disclosure into the specification and make it available for the latter purpose." We cannot agree with that conclusion since resolution of the above question would dispose of the issue of insufficient disclosure. The Patent Office tribunals do not deny that Serial No. 489,769 discloses the preparation of the $\Delta^1$, $\Delta^{1,4}$, and $\Delta^{4,6}$ starting materials. Indeed the solicitor agrees that those starting materials are disclosed by Serial No. 489,769. The application as filed also referred to Serial No. 417,489, a copending application which prepares and claims the $\Delta^4$ starting materials. Furthermore, no statement was ever made by the examiner to the effect that the $\Delta^4$ steroids were insufficiently disclosed.[6] The board on reconsideration said:

"Petitioners also contend that the adequacy of the disclosures of the $\Delta^4$ pregnenes is not in issue. This is not the case as the Examiner on page 4 of the Answer, states that the 'application Serial No. 489,769 fails to show the preparation of all of the starting materials used to synthesize the compounds recited in claims 20 and 21, i. e., 9β, 11β–oxido–17–desoxy–pregnene–21–o1 derivatives' or more specifically 9β, 11β–

2. Serial No. 417,489, filed March 10, 1954, and Serial No. 489,769, filed February 21, 1955.

3. The specification earlier teaches a method for reducing the 21-iodo compounds of claim 21 to the corresponding 21-unsubstituted compounds.

4. We do not see that reliance on a *commonly assigned* application, cited in the specification as filed, cannot be barred merely because of different inventorship.

5. The board also refused to consider Serial No. 517,917 because it was not referred to in the application as filed. Since appellants concede that Serial No. 517,917 is merely cumulative to the disclosure of Serial No. 489,769, we need not consider that matter.

6. Original claims 3 and 4 drawn to $\Delta^4$ pregnene esters of a sulfonic acid, which claims are species of claim 20, were allowed by the examiner.

*oxido-17-desoxy-Δ⁴-pregnene 21-ol.*" (Last emphasis supplied)

It seems to us that the emphasized portion at the end of that statement was not included in the comments of the examiner. He said:

"Serial No. 489,769 fails to show the preparation of all of the starting materials used to synthesize the compounds recited in claims 20 and 21, i. e. 9β, 11β-oxido-17-desoxy-pregnene-21-ol derivatives. * * *"

Reading that statement of the examiner in view of his earlier remarks that "only the Δ⁴ steroids corresponding to the formulas given on pages 1 and 4 of the specification have been sufficiently disclosed," we can only conclude that the examiner was referring to Δ¹, Δ¹,⁴ and Δ⁴,⁶ steroids having no hydroxy group in the 17α position.

Appellants point out that a generic method of preparation is disclosed in Serial No. 489,769 wherein the 17α position may have a hydroxy or a hydrogen radical. In addition, the preparation of the Δ¹, Δ¹,⁴ and Δ⁴,⁶ 17α hydroxy steroids is specifically disclosed. The generic teaching discloses that the specific example of the preparation of 9β, 11β-oxido 17α-ol pregnenes would work whether the 17 position was so substituted or not.

■ Thus the preparation of all the starting materials is adequately disclosed in the copending applications and we see no reason why appellants may not rely on those disclosures. The possibility of the instant application issuing as a patent while Serial No. 489,769 was still pending and unavailable to the public, was eliminated by a waiver of secrecy filed by appellants' assignee.[7] Since claim 20 is not rejected on any other ground we are obliged to reverse the decision of the board on that claim.

■ The second issue presented is the rejection of claims 6 and 21 as unpatentable over the Nathan patent.

Nathan discloses the generic reaction scheme:

---

7. The waiver of secrecy was filed during the prosecution. Serial No. 489,769 has since matured into patent No. 3,101,332.

Serial No. 417,489 had issued as patent No. 2,852,511 at the time said waiver of secrecy was filed.

The Δ symbol above represents unsaturation at either the 4,5 or the 5,6 positions. R′ may represent a ketonic oxygen atom (=O), R a 9:11–β–oxide, R″ a hydrogen or hydroxy group.

Nathan specifically discloses twenty steroids which may be used as starting materials in the outlined reaction scheme. One of those is 9:11–β–oxido–21–(trifluoroacetyl) progesterone. When the latter is used as compound A in the above reaction scheme compound C will be 21–iodo–9:11–β–oxido progesterone which may be written as 21–iodo–Δ⁴–pregnene–9β, 11β–oxido–17α–o1–3,20–dione, the compound of claim 6.

Appellants contend that compound C in Nathan's reaction scheme is simply a transitory intermediate and as such is never prepared. They argue that the 21–iodo intermediate cannot be prepared because Nathan's reaction is conducted in an acidic medium and, as taught by their specification, in an acidic solvent, the 21–unsubstituted products are obtained directly.

In re Jacobs and Bauer, 318 F.2d 743, 50 CCPA 1316, presented a similar factual situation. There a reference patent to Miller disclosed a method for the preparation of perfluoroallene and claimed it as "Perfluoroallene, B.P.–28°C." Appellants therein claimed perfluoroallene, B.P.–38°C and maintained that perfluoroallene was not disclosed by Miller because the method of preparation in Miller's patent was inoperative. To substantiate that contention Jacobs and Bauer cited an article by them which appeared in the Journal of the American Chemical Society stating that they were unable to make perfluoroallene by the reaction disclosed by Miller. They also referred to a second article coauthored by Miller, which reported a process employing the same reactants as in the Miller patent but producing a different product.

We said in that case:

"In order for appellants to prevail, and in view of the Miller disclosure, we think that appellants have the burden of proving that Miller's process was not operative to produce perfluoroallene and could not be made operative by use of ordinary skill of the art, and that therefore Miller's perfluoroallene never existed. Bullard Co. et al. v. Coe, Com'r Pats., 79 U.S.App.D.C. 369, 147 F. 2d 568. Furthermore, this court, in In re Spence, 261 F.2d 244, 46 CCPA 722, 725, said:

" 'The invention disclosed in a patent is presumed to be operative because the patent enjoys a statutory presumption of validity, 35 U.S.C. § 282, and operativeness is a prerequisite to validity, 35 U.S.C. 101. An inoperative device lacks the utility which is required by statute.' "

We concluded in the Jacobs and Bauer case that the presumption of operativeness of the Miller process was not overcome by the cited publication.

Applying the same yardstick used in Jacobs and Bauer we conclude that appellants have not discharged their "burden of proving that [Nathan's] process was not operative to produce [21–iodo–9:11–β–oxido-progesterone] and could not be made operative by use of ordinary skill in the art, and that therefore [Nathan's 21–iodo 9:11–β–oxido–progesterone] never existed."

Appellants charge that their 21–iodo steroid is disclosed only as a transitory intermediate in Nathan and therefore is never prepared. We note, however, that the reference states unequivocally that the 21–iodo intermediates are produced but are then converted to the corresponding 21–acetoxy products. Nathan is primarily concerned with the recovery of the 21–acetoxy pregnene derivatives and therefore does not attempt to *isolate* or *recover* the 21–iodo pregnenes. There is no evidence to suggest that it is beyond the skill of a chemist to alter the reaction conditions and isolate the disclosed intermediate. Indeed Nathan suggests that his process may be somewhat reversible. Furthermore, we think a chemist would recognize the distinction between an intermediate which forms

and proceeds to react further in situ and an intermediate which never really exists because it decomposes spontaneously.[8] There is no evidence here from which to conclude that the 21–iodo intermediate is never actually formed in Nathan's process. Appellants' statements to that effect are not enough.

As evidence of the inoperativeness of Nathan's process appellants refer to a statement in their specification that 21–

unsubstituted pregnenes are directly obtained in an acidic medium. Nathan states, however, that he obtains 21–*acetoxy* pregnenes in an acidic medium indirectly. We are not in a position, on this record, to hold that appellants are correct and Nathan is incorrect.

The rejection of claims 6 and 21 as unpatentable over Nathan *is* affirmed: the rejection of claim 20 is reversed.

Modified.

8. For example, Kirk & Othmer "Encyclopedia of Chemical Technology" Vol. 3, p. 149 (1949) discloses that in the preparation of carbonates by the reaction of phosgene with alcohol, chlorofomates are produced. Whether the chlorofomates are isolated or are permitted to continue to react and form carbonates is a matter of choice.