55 CCPA

## Application of Charles F. BARANAUCKAS and Samuel Gelfand.

### Patent Appeal No. 7945.

United States Court of Customs and Patent Appeals.

June 6, 1968.

---

Raymond F. Kramer, Niagara Falls, N. Y., for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and SMITH, ALMOND, and KIRKPATRICK,* Judges.

SMITH, Judge.

The ultimate issue to be determined in this appeal is whether appellants' claimed invention when made would have been obvious in view of certain prior art within the meaning of 35 U.S.C. § 103.

That issue is presented in an appeal from the decision of the Patent Office Board of Appeals,[1] affirming the ex-aminer's rejection of certain claims of appellants' application.[2]

### The Invention

The invention relates to a process for oxidizing a nonterminally double-bonded, halogen-substituted olefinic hydrocarbon. Appellants' specification explains that the double bond of the hydrocarbon is cleaved; the carbon atoms involved in the double bond are converted to structures possessing a carbon-oxygen double bond; and all of the chemical elements of the original olefin are retained in the final product. The oxidation of those compounds is effected by such oxidizing agents as oxygen, air, chlorine dioxide, and other oxides of chlorine, in the presence of chlorine and actinic light to produce oxygen-containing products.

In the specification, the process is generally disclosed by two general reactions wherein the starting material is either a cyclic olefin or an acyclic olefin. As a result of the requirement for election, note 2 supra, only the reaction of the cyclic olefins need be considered in determining this appeal. Thus, appellants' invention is primarily a process for making perhalogenated acyl halides, such as hexafluoroglutaryl chloride, by cleaving and oxidizing the carbon to carbon double bond of a halogenated cyclic olefin, such as 1, 2-dichloro-3, 3, 4, 4, 5, 5-hexafluorocyclopentene, with oxygen in the presence of chlorine and actinic light. In this reaction, the oxygen atoms satisfy the valences of the carbon atoms of the original double bond and the halogens originally attached to the carbons of that double bond are retained thereon in the final product.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Messrs. Asp and Magil, Examiners-in-Chief, and Sterman Acting Examiner-in-Chief. Mr. Magil wrote the opinion of the board.

2. Claims 1, 3, 4, 6, 23, 37 and 39 of appellants' application Serial No. 343,144 filed February 6, 1964, entitled "Process for the Oxidation of Non-terminally Double-bonded Halogenated Olefins" form the subject of this appeal. Claims 2, 5, 7–22, 24–36, 38 and 40–44 stand withdrawn from consideration under Rule 142(b) as not reading on the elected species. No claims were allowed. The application is denominated a "continuation-in-part" of Serial No. 699,520, filed November 29, 1957.

*The Claims*

The board considered claim 1 as illustrative; it reads:

1. The method of cleaving the C=C double bond of a halogenated olefin selected from the group consisting of:

(A)

$$\begin{array}{ccc} & R & \\ C & = & C \\ | & & | \\ X & & X \end{array}$$

and

(B)

$$R'-C=C-R'' \\ \qquad | \quad | \\ \qquad X \ \ X$$

wherein R is a divalent perhalogenated hydrocarbon radical, and wherein R' and R'' are monovalent perhalogenated hydrocarbon radicals and wherein the substituents in R. R' and R'' are selected from the group consisting of chlorine and fluorine and wherein said chlorine comprises from 0 to 50 percent of the total number of the halogen substituents in each R, R' and R'' radical, and wherein X is selected from the group consisting of chlorine, fluorine and alkoxy, and wherein at least one of the Xs of both (A) and (B) is selected from the group consisting of chlorine and fluorine; which comprises oxidizing the selected olefinic starting material in the presence of an oxidizing agent selected from the group consisting of oxygen, air and oxides of chlorine, and under the influence of chlorine and actinic light, wherein oxygen satisfies the valence of the carbon atoms of the original double bond, and all of the Xs are retained in the final product.

Appellants consider claims 4 and 23 to be "more typical." They explain that the generic claims, such as claim 1, include reactions of acyclic olefins, which are not specifically the subject of the present appeal, nor were they the subject of the appeal before the board.

Claim 37 describes "a process for preparing directly acyl halides" which corresponds to the process of claim 1. Claim 4 corresponds to the process of claim 1 and is limited to the cyclic olefins. Claim 3 also depends upon claim 1 and states that the oxidizing agent is oxygen. Claim 6, which depends upon claim 4, describes the halogenated olefin as a dichlorohexafluorocyclopentene while claim 23 depending from claim 6, specifies 1, 2-dichlorohexafluorocyclopentene. Claim 39 recites "[a] process according to claim 37" wherein the acyl halide product is hexafluoroglutaryl chloride. All the claims stand or fall together.

*The References*

To support the rejection, the examiner, in his Answer, and the board, in its opinion, relied upon the following references:

| | | |
|---|---|---|
| Miller | 2,712,554 | July 5, 1955 |
| Calfee et al. (Calfee) | 2,736,695 | Feb. 28, 1956 |

Miller's invention relates to the oxidation of halogenated olefinic compounds in the presence of an activator to produce oxygen-containing products. Miller explains that, in "conventional oxidation processes," actinic light or relatively high temperatures are employed to initiate the oxidation reaction which normally will not start unless activated. Miller explains that the use of actinic light or high temperatures is unnecessary in the presence of the activator of his invention for the oxidation of the organic compounds of the type disclosed in that reference. One of the objects of the reference is to provide processes for preparing halogenated acyl halides.

Because of the dispute between the appellants and the Patent Office as to

the scope of the factual teachings of Miller, and the factual inferences which which may be derived from that reference, it is necessary to consider in some detail the following passage from the Miller patent:

In accordance with the present invention a halogen substituted olefinic compound is oxidized with free oxygen in the presence of added fluorine to produce oxygenated products. The olefinic organic compounds which are oxygenated with free oxygen employing free fluorine as an activator are the olefinic hydrocarbons substituted only with gaseous halogen containing no more than one unsubstituted hydrogen atom per carbon atom and containing a chlorine atom attached to an olefinically bonded carbon atom. * * * It is also preferred that the carbon atoms of the double bond be completely substituted with gaseous halogen.

It has been found that the elemental fluorine which is employed as an activator has the property of causing the formation of free radicals when brought into contact with the olefinic compounds of the above type. These free radicals are formed by the presence of elemental fluorine *without the necessity of the use of actinic light or without the necessity of the use of as high a temperature as would be necessary with the use of other halogens as activators, such as chlorine without actinic light, for the same olefinic compound to be oxidized.* The free radicals so produced are highly reactive with oxygen. The action of fluorine in this respect is particularly valuable in providing a method for reacting halogenated olefins and oxygen of the above type to form halogenated compounds containing the—(CO)—group, such as carbonyl halides, halogen substituted acyl halides and halogenated ketones. * * * [Emphasis added.]

In addition, Miller discloses that both terminally double-bonded and non-terminally double-bonded halogen-substituted olefinic hydrocarbons are oxidized in the presence of free or elemental fluorine as an activator.

Calfee relates to the preparation of trichloroacetyl chloride by oxidizing tetrachloroethylene with an oxygen-containing gas in the presence of actinic radiation and in the absence of a catalyst. According to Calfee:

Trichloroacetyl chloride has been prepared *in the past* by the liquid phase oxidation in the presence of actinic light of tetrachloroethylene (tetrachloroethene, perchloroethylene) with an oxygen-containing gas such as air in the presence or absence of chlorine as a catalyst. The above procedure is unsatisfactory in that the time required to complete the reaction is excessively long (4–12 days), especially when carried out in the absence of chlorine and if it is desired to obtain trichloroacetyl chloride free from perchloroethylene, the oxidation is continued until all of the perchloroethylene is oxidized even at the risk of diminished yields through side reactions, since trichloroacetyl chloride and tetrachloroethylene are not readily completly separable by simple distillation techinques.

It is also known that in the presence of chlorine, tetrachloroethylene will react in the vapor phase with oxygen under the influence of actinic radiation to produce trichloroacetyl chloride.

### The Rejection

In the examiner's Answer, the rejection of all of the appealed claims is predicated on their being "unpatentable over Miller in view of Calfee et al." This rejection was treated by the board as a rejection under 35 U.S.C. § 103 and we shall so consider it. The examiner interpreted the discussion of Miller relating to "conventional oxidation processes," described above, to mean that oxidizing in the presence of prior art activators requires an initiator such as

actinic light or high temperatures. He also referred to that portion of Miller quoted above where it is stated that an activator such as chlorine would require actinic light or high temperatures as an initiator. He drew further support for his conclusion from that portion of Calfee, also quoted above, as evidence that terminally double bonded halogenated olefins, as in Miller, are oxidized with oxygen in the presence of ultra-violet light and chlorine to produce acetyl or acyl halides.

From this discussion of Miller and Calfee, the examiner thus concluded:

* * * it would be obvious to substitute ultra-violet light and chlorine for the fluorine activator in the process of Miller with the expectation of cleaving the non-terminal C=C double bond in the halogenated olefins of the formulae of column 2, lines 52 and 61, as in appellants' process, to produce the corresponding acyl or acetyl halide. * * *

The board affirmed, stating:

Despite appellants' arguments to the contrary, we believe that Miller adequately discloses that chlorine was used with actinic light in the oxidation of halogenated olefinic compounds. We realize that the patent does not expressly state "chlorine with actinic light," but it is evident from the context as a whole that chlorine was previously initiated or activated with heat or light. * * * Moreover, Calfee et al., * * * refer to the conjoint use of chlorine and actinic light with oxygen in the oxidation of tetrachloroethylene, one of the materials oxidized by Miller. * * *

While the examiner had referred to four particular reactions specifically disclosed by Miller, the board narrowed its consideration to the following:

Apparently, this reaction proceeds as does an earlier-listed reaction in Miller, i. e., in the presence of oxygen and fluorine. The board described this reaction as the treatment of 1, 2-dichlorohexafluorocyclopentene with oxygen in the presence of fluorine to produce 2, 2-dichloro-3, 3, 4, 4, 5, 5-hexafluorocyclopentene and hexafluoroglutaryl chloride. The board noted that the relative amounts of the two products may be controlled by changing the reaction conditions. In this respect, the following disclosure of Miller relating to the listed reactions as a group is pertinent:

* * * In each case, the principal products which may be obtained are indicated. Their relative amounts may be controlled by changing the reaction conditions—for example, higher temperatures result in the formation of relatively more cleavage products, that is, products formed with cleavage of carbon carbon bonds. * * *

The board thus concluded that there is "nothing unobvious in carrying out the oxidation process of equation 26" of Miller "in the presence of chlorine and actinic light in lieu of fluorine if one is willing to accept the limitations discussed in the penultimate paragraph in column 9 of the [Miller] patent."

Insofar as is pertinent here, that paragraph provides:

* * * The commercial methods for reaching halogen-substituted olefins and oxygen or chlorine have heretofore required difficult operating conditions and complicated equipment. *The conventional reaction conditions rely on activation of the reactants by high temperatures and/or light.* The use of light has been attended with great operating difficulties because of the limited zone of activity around the light source, coating of the light source with reaction products, difficulty of operating with colored mixtures, etc. The high temperature reactions are unsuitable for many compounds because of excessive decomposition. The fluorine-promoted reactions of this invention are rapid, permit great flexibility in operating temperatures and other conditions, and require only simple types of equipment. * * *

In summary, the board added:

There is certainly nothing unique in the oxidation of non-terminally double bonded acylic halogenated olefins or alicyclic halogenated olefins, the treatment of these materials being described in the last two paragraphs in column 2 and exemplified in equations 20 to 29 in columns 8 and 9 of the Miller patent. [Equation 26 is reproduced above.] The fact that the double bond is cleaved and replaced by oxygen on each of the adjacent carbon atoms is also clearly shown in equations 20 to 29. Although each of these equations also shows the production of ketones, the relative proportions of the two products may be controlled as indicated in column 7, lines 67 to 71.

## Opinion

The initial difficulty presented here deals with the inability of the parties to agree upon the scope and content of the prior art. That content must be determined before the mandates of the Supreme Court set forth in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) may be accurately applied. There it was stated:

* * * the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. * * *

Here the appellants initially challenge the efficacy of the Miller patent to sustain the rejection. They argue that the only question is whether the Miller reference really discloses as prior art the use of chlorine, oxygen and actinic light in reactions sufficiently close to those of the present invention to require the conclusion that the claims are obvious in the statutory sense.

■ The essence of the evidentiary question here is what the *disclosure* of a prior art patent *means* to one of ordinary skill in the art. Where a portion of that prior art disclosure refers to the state of the art as it existed at the time that the application for the prior art patent was filed, that disclosure likewise must be tested against a standard of that prior art disclosure refers to in the art. We think that the criterion to be applied to such questions is whether the statement as to the state of the art, which is contained in a prior art patent, is sufficient to enable one skilled in the art to reduce the subject matter of such statement to practice. See In re Sheppard, 339 F.2d 238, 52 CCPA 859 (1964); In re LeGrice, 301 F.2d 929, 49 CCPA 1124 (1962); see also In re Borst, 345 F.2d 851, 52 CCPA 1398 (1965); In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964).

Applying that test here, we agree with the Patent Office that it may be fairly concluded from the reference to the prior practice set forth in Miller that the prior practice, with which one of ordinary skill in the art is properly charged, is that the use of chlorine with either actinic light or high temperatures as a catalyst was known. That disclosure, in our view, is sufficiently particular and definite to make its use obvious to one skilled in the art to which it pertains. While Miller's efforts may have been directed to the use of fluorine so that the use of actinic light or higher temperatures would be unnecessary, it may be fairly concluded that it was obvious at the time the present invention was made to a chemist of ordinary skill in this art that either light or heat is necessary with another halogen, such as chlorine. Thus, we agree with the examiner and the board that one of ordinary skill in the art upon reviewing the entire disclosure of Miller would reasonably conclude that the prior practice was to use chlorine and actinic light or heat instead of fluorine without either actinic light or heat.

Appellants seek to distinguish the applicability of the disputed disclosure with respect to reactions of cyclic olefinic compounds, urging that the description of the prior practice in Miller refers to acyclic compounds only. It seems clear, however, that Miller's reference to "the olefinic compounds of the above type," when read in the light of the patent as a whole, refers to the halogen substituted compounds of the patent. Those compounds, of course, include both the cyclic and acyclic halogenated olefins.

Appellants further argue that if it is obvious to use the combination of chlorine, oxygen and actinic light to cleave the double bond of the cyclic fluorinated reactant materials of the present invention, the unexpectedly beneficial effect of producing a large proportion of hexafluoroglutaryl chloride with low temperature reactions, especially in view of Miller's teaching of the use of heat,

is considered to be sufficiently unobvious to indicate that the present reactions, considering the yields and products obtained, would be "unobvious" from the prior art and therefore would be patentable. We do not think that appellants' proofs are sufficient to support that contention.

In support of this argument, appellants rely upon the affidavits of Dr. Charles F. Baranauckas, one of the appellants here, and Dr. Edward D. Weil. The Baranauckas affidavit is said to establish that, by his reaction, one may produce hexafluoroglutaryl chloride in good yields and yet not obtain the corresponding cyclic ketone. The latter point is in reference to the appellants' argument that their invention differs from Miller's most pertinent reaction in that appellants do not produce a cyclic ketone. The board thought this affidavit to confirm the statements of Miller that the relative amounts of the resulting products could be controlled by adjusting reaction conditions. We, like the board, do not think that the Baranauckas affidavit rebuts the facts upon which the prima facie case of obviousness is based by the Patent Office by reliance on the Miller and Calfee references.

The Weil affidavit is said to show that other catalytic agents which might have been suggested by the references as appropriate or which are closely related to the suggested catalysts, were found to be inoperative. From this, they conclude that this operativeness of the oxygen-chlorine-actinic light system cannot be said to have been obvious.

The board characterized the Weil affidavit as "of little value" to the appellants. We agree, deeming it a sufficient response to appellants' reliance upon the affidavit to refer to our discussion of the Miller reference, supra.

Thus, the decision of the board is affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.