53 CCPA
**Application of Karl ZIEGLER, Heinz Breil, Heinz Martin and Erhard Holzkamp.**
**Patent Appeal No. 7485.**

United States Court of Customs and Patent Appeals.
Aug. 4, 1966.

Arnold Sprung, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

Appellants copied a claim in modified form from a patent of Weber et al. (Weber) for the purpose of provoking an interference on a catalyzed process for producing polyethylene. During the motion period of the resultant interference appellants' motion to add counts corresponding to Weber's other two claims, also modified by the omission of temperature and pressure limitations, was denied on the grounds that appellants had no right to make. The interference was eventually dissolved upon disclaimer by Weber. We are involved

here in subsequent ex parte proceedings on claims 28 and 29 that correspond to the proposed counts which were not permitted in the interference.[1] Those two claims were rejected by the examiner on the ground of insufficient support in the present application, 35 U.S.C. § 112. Appellants have appealed the board's decision affirming the rejection; we affirm.

Appellants disclose a process for controlling the degree of polymerization of a polyethylene formed by the reaction of gaseous ethylene in the presence of two-component Ziegler-type catalysts. Such catalysts are well known as a mixture of a metal organic compound and a compound of a heavy metal.

Appellants have discovered that the degree of polymerization, measured in terms of the average molecular weight of the resultant polyethylene, may be controlled by adjusting the molar ratio of the two catalyst components. So far as is pertinent here, appellants disclose that the organic metal compound catalyst component may be an organic aluminum compound of the general formula RAlXY, wherein R is H or a hydrocarbon radical, X is R or OR′, Y is R, a halogen atom or OR′, and R′ is a hydrocarbon radical. It is preferred to use dialkyl aluminum monohalides. Titanium tetrachloride is the most frequently mentioned example of the heavy metal catalyst component. Starting from a molar ratio of organic aluminum compound to titanium tetrachloride (referred to by appellants as Al : Ti) as an initially large value of about 12, the influence of reductions in the ratio on the molecular weight of the polymers is initially slight. Only a slight increase is observed by a reduction to a 3 : 1 ratio, but a reduction to 2 : 1 increases the molecular weight more strongly to a value of about 320,000. Appellants disclose that:

\* \* \* A zone then follows in which extraordinarily small changes in the

1. The claims are part of appellants' application serial No. 527,413, filed Aug. 9, 1955, for "Process for the Production of Polyethylenes." The examiner allowed claims 1–18, and 22 (the count of the interference corresponding to Weber's claim 3), not involved in this appeal.

conditions referred to exerts quite an unusually strong influence on the molecular weight of the polymers obtained. If a ratio of 2 Al : 1 Ti is initially used and if the ratio is changed to 1 : 1 to 0.5 : 1, this causes a drop in the molecular weight from 320,000 to 20,000, so that it is possible to obtain any desired molecular weight between about 20,000 and 320,000 by a fine adjustment of the ratio between the organic aluminium compound and the titanium tetrachloride within this sensitive range.

Appellants also disclose that the commencement of the "sensitive range" or "zone" depends somewhat on polymerization conditions. The application continues:

> * * * The essential feature of the present invention does not consist so much in determining the accurate numerical limits of these sensitive zones for each conceivable combination, as in the fundamental discovery that there is in fact such a sensitive zone. The position of this zone can extremely easily be determined by the expert interested in this matter, after he has acquired this knowledge, by a small series of experiments and plotting t[he] experiments by means of curves.

The molar ratio Al : Ti is broadly stated to be within the range of from 8 : 1 to 0.2 : 1, although the "sensitive range" limits are noted to be different and narrower for each catalyst combination. For diethyl aluminum chloride and titanium tetrachloride the "sensitive range" is from 3 : 1 to 0.67 : 1 and for diisobutyl aluminum chloride the range is from 8 : 1 to 0.5 : 1.

Appealed claim 28 reads:

> 28. A process for the polymerization of gaseous ethylene in the presence of a polymerization catalyst which comprises polymerizing the gaseous

ethylene in the presence of a catalytic amount of a mixed catalyst of ethyl aluminum sesquichloride and titanium tetrachloride having a ratio of about 0.5–0.8 mol of titanium tetrachloride per mol of ethyl aluminum sesquichloride.

Claim 29 differs therefrom only in specifying a mole ratio range of "about 0.3–2.5" Ti to Al.[2]

The appealed claims are specific to $TiCl_4$ and ethyl aluminum sesquichloride. The sesquichloride is a mixture of diethyl aluminum chloride with ethyl aluminum dichloride. Appellants do not contend that either the sesquichloride or the molar ratios therefor find specific support in the present application taken alone. Rather, appellants base their contention for support of the limitations on another application, serial No. 482,412 (hereinafter "412") filed January 17, 1955, which is referred to in the appealed application. Applicants contend that the "412" application is referred to in the appealed application in such a manner as to be incorporated by reference therein. That manner of reference comprises part of the following background discussion of three applications, including the "412" application, relating to processes for the production of polyethylene:

> This invention relates to a process for the production of polyethylenes with predetermined degrees of polymerization.

> Specifications application Serial No. 569,059, filed Nov. 15, 1954, application Ser. No. 482, 412, filed Jan. 17, 1955, and application Ser. No. 482,413, filed Jan. 17, 1955, relate to processes for the production of valuable plastic-like polyethylenes of high molecular weight by polymerization of ethylene under comparatively very gentle conditions of temperature and pressure in the presence of catalysts which are obtained from organic metal compounds together with compounds of the heavy

---

2. It is to be noted that claims 28 and 29, as derived from Weber, refer to the ratio as Ti : Al. Thus the values must be translated into their reciprocals in order to make direct comparison with the Ziegler applications here involved.

metals of the sub-groups of the 4th–6th groups of the Periodic System. * *

\* \* \* \* \*

According to Specification application Ser. No. 482,412, filed Jan. 17, 1955, the organic metal compounds used are aluminium compounds of the general formula $R_2AlX$, in which R is a hydrogen atom or a hydrocarbon radical and X is *inter alia* a hydrogen or halogen atom, a hydroxyalkyl group or a hydroxyaryl group. Dialkyl aluminium monohalides or diaryl aluminium monohalides are preferably used as the organic aluminium compounds. When these compounds are used, compounds of the 8th sub-group of the Periodic System or compounds of manganese can be used as the heavy metal compounds instead of or in addition to the compounds of the metals of the 4th–6th sub-group of the Periodic System, including thorium and uranium.

Following that discussion, the appealed application states that "it has now been found that *in the processes set forth* * * *" (emphasis added) a "sensitive range" of catalyst component mole ratios has been discovered. "Processes set forth" is a clear reference to the processes in the three applications.

The examiner rejected the claims for lack of support because "the present application does not disclose the use of the ethyl aluminum sesquichloride, titanium tetrachloride catalyst in the claimed mole ratios." The examiner's position, as expressed in his answer, is that:

\* \* \* a mere reference to the copending application without any statement as to what it is relied on for is not sufficient to incorporate the teachings of the copending application into the present application. \* \* \*

The examiner would have the reference in the appealed application state a par-

ticular example for completion of the disclosure.

The pertinent disclosure in the "412" application on which appellants rely is as follows:

The starting aluminum compounds in accordance with the invention need not be completely pure or homogenous. Crude products or solutions obtained in the course of the preparation of these compounds may be used. Furthermore, the polymerization catalyst may be prepared using mixtures of the aluminum compounds in accordance with the invention. Thus, for example, such catalysts can be prepared using the so-called alkyl-aluminum-sesquihalides, i. e. mixtures of compounds $R_2AlHalogen + RAl(Halogen)_2$, as may be obtained by dissolving metallic aluminum in halogenated alkylenes.

Also, Example 1 of the "412" application is directed to the formation of a catalyst from 20g. diethyl aluminum chloride and 1 g. $TiCl_4$, which is used to produce polyethylene. The Example then concludes:

The example is repeated using in place of the diethyl-aluminum monochloride the same quantity of so-called sesquichloride. The yield of polyethylene corresponds precisely to the total quantity of monomeric ethylene which has disappeared.

The nature of the invention here is an improvement in prior processes consisting of a discovery about the ratios of catalyst components used in those processes. Considering that nature within the context of the disclosure as set out above, we cannot say that the reference to the "412" application is a "mere reference to a copending application." It appears clear that the subject catalysts disclosed as part of the processes of the three applications are also the subjects of the improvements here.[3] Although the appealed application refers to the "412"

---

3. We note that no more reference than what is given for the catalysts of the "412" application was deemed necessary by the primary examiner in the interference to incorporate by reference into the appealed application operating conditions set forth in the "412" application.

organic aluminum compounds as being "of the general formula $R_2AlX$ * *," which is not the formula for the sesquichloride mixture, we are of the view that such a reference does include the sesquichloride by virtue of the above-quoted "412" disclosure that indicates the sesquichloride may be used in place of the compounds "$R_2AlX$". Thus we conclude that the teachings of the "412" application about the sesquichloride have been incorporated by reference into the appealed application. In that view we are in disagreement with the examiner and the board.

However, we do agree with the examiner and the board that even with the disclosure of the sesquichloride incorporated in the instant application, there is insufficient support for the limitations as to mole ratios reflective of the "sensitive range." On this point the examiner's position, as stated in his answer, was that:

* * * even if the teachings of the copending application are incorporated into the instant application, Example I of the copending application would only teach one skilled in the art that both the monochloride and the sesquichloride are operable for producing polymerization and would not teach that one skilled in the art should use the same mole ratio of sesquichloride: Ti as monochloride: Ti to effect a control of the molecular weight. * * *

From the teaching in the appealed application that the molar ratios are distinct for each different organic aluminum compound, the examiner concluded that the disclosed molar ratio for the monochloride is not applicable to the sesquichloride. The examiner calculated the "412" teaching as to sesquichloride corresponds to a Ti : Al ratio of 0.04, which is not within the claimed range.

Appellants argue that the gist of the two applications taken together is to teach one skilled in the art to use any of the catalyst systems disclosed in "412," and to use the molar ratios as taught in the present application. Appellants refer to the teaching of the appealed application that "the position of this zone can extremely easily be determined by the expert interested in this matter, after he has acquired this knowledge * * " of the existence of the zone. Appellants concede that there is no specific disclosure of the claimed molar ratios.[4] They urge, however, that since the claims were copied for purposes of interference it is permissible to narrow the broad disclosed range of Al : Ti of from 8:1 to 0.2 : 1 to that of the appealed claims, 2 : 1 to 1.25 : 1 (claim 28 ) and 3.33 : 1 to 0.4 : 1 (claim 29), in accordance with the Commissioner's Notice of April 5, 1954, 681 O.G. 864, relating to modifications of the so-called Card & Card practice, Ex parte Card and Card, 1904 C. D. 383, 112 O.G. 499.

In so arguing, appellants urge that the "412" case in the above-quoted portion teaches the equivalence of the sesquichloride to diethyl aluminum monochloride, and that the "same quantity" of each may be used. A disclosure of quantity is not the same as the needed disclosure of mole ratio. It is unrebutted on this record that the "same quantity" of sesquichloride corresponds to a mole ratio of 0.04 (Ti : Al), well outside both the ratio of claims 28 and that of claim 29, and also outside the broadest range claimed or disclosed. An equivalence is taught, but it is not that of ranges; an equivalency for the polymerization of ethylene is all that is taught. Such equivalence cannot be support for the invention relating to a "sensitive range." Thus, a range of Ti : Al of from 0.33–1.5 for diethyl aluminum chloride does not support the same, a narrowed, or a broader range for the sesquichloride.

The gist of appellant's argument that the range can be easily determined once the existence thereof is known, is contrary both to the disclosed sensitivity and criticality of a range, and also to the

---

4. We do not agree with appellants that there is no question concerning support for the ranges of claim 28.

requirement of 35 U.S.C. § 112 that *the invention* be described in such full, clear, concise, and exact terms as to enable any person skilled in this art to make and use the same. The background context of the invention as claimed here convinces us that it deals with more than the existence of the range alone. The determination of the range is a critical and integral part of the invention. This is particularly true in view of the fact that the catalyst mixtures per se are the subject of a prior invention, as acknowledged by the appealed application. The present invention involves the use of specific ratios of the catalyst components rather than the use broadly of the components.

We do not think this case one in which resort may be had to the practice described in the aforementioned Notice of April 5, 1954. Where the same invention is disclosed by the parties but with slightly different ranges, the count in effect may be modified by permitting each party to submit his own range for his claim. The one party's claim in fact reads on the other. Such practice assumes that each of the interfering applications discloses a range for the same materials. Such practice is not applicable to the facts here since there is no disclosure of any aspect of a critical range for the sesquichloride. As noted above, a range for diethyl aluminum monochloride is not support for a range for the sesquichloride. This follows even though somewhat different "sensitive ranges" might be disclosed by each party as resulting from a different selection of molecular weights to be predetermined. Nor do we think appellants are entitled to assert the broadly disclosed and claimed (claim 1) range of 8 : 1 to 0.2 : 1 for "a metal organic compound" as support for the ranges of the appealed claims. A substantial distinction exists between such a range and the ranges of claims 28 and 29. In part of that range there is clearly little or no effect on molecular weight by changes in the ratio for a given catalyst combination. Further, the broad range clearly has little applicability to any one specific catalyst, for each one of which the "sensitive range" is far narrower and different.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

ALMOND, J., concurs in the result.