54 CCPA

**Application of Frantz LUND and Wagn Ole Godtfredsen.**

**Patent Appeal No. 7713.**

United States Court of Customs and Patent Appeals.

May 11, 1967.

Lawrence S. Levinson, Westfield, N. J. (N. Dale Sayre, Robert Alpher, New York City, Merle J. Smith, Scotch Plains, N. J., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 2–4, 15 and 16 in appellants' application[1] entitled "Substituted Dihydrobenzothiadiazines."

The subject matter of the application relates to certain 3-substituted-6-trifluoromethyl-7-sulfamyl-3, 4-dihydro-1, 2, 4-benzothiadiazine-1, 1-dioxides of the formula

As set forth in the claims, the "R" group at position 3 of the benzothiadiazine nucleus is the only variable,[2] defined in claim 15 as "Aralkyl," in claim 16 as "mononuclear aralkyl," in claim 2 as "Phenyl (lower alkyl)", in claim 3 as "benzyl" and in claim 4 as "phenethyl."

Appellants prepare the claimed compounds by reacting $\alpha,\alpha,\alpha$-trifluoro-$m$-toluidene,

with excess chlorosulfonic acid in the presence of an alkali metal chloride to yield 5-trifluoromethylaniline-2,4-disulfonyl chloride. That compound is treated with aqueous ammonia to yield 5-trifluoromethyl-2,4-disulfamylaniline,

The latter derivative, in turn, is reacted with an aldehyde of the formula RCHO, where R is as defined above, to yield the claimed compounds. To obtain the 3-benzyl compound of claim 3, for example, phenylacetaldehyde is reacted with 5-trifluoromethyl-2,4-disulfamylaniline.

According to appellants, the claimed compounds exert "strongly saluretic [sodium expelling] and diuretic [water expelling] effects" and are useful in the treatment of heart conditions and hypertension. The record shows that the compounds of the claims are generally more active than the corresponding 3-unsubstituted or 3-aliphatically substituted compounds, with the specific compounds

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 831,949, filed August 6, 1959.

2. Disclosed, but not claimed, are compounds substituted in the 5-position by halogen and lower alkyl.

of claims 3 and 4 having greatest activity.

With that background information concerning appellants' invention in mind, we turn to the issues presented to us by the decision of the board and appellants' reasons of appeal. As those issues are quite diverse in nature, we shall discuss each separately.

### The 35 U.S.C. § 112 Rejection

The examiner rejected claims 15 and 16 as "failing to properly define the invention in accordance with the requirements of 35 U.S.C. 112." He was of the view that the expressions "aralkyl" and "mononuclear aralkyl," which are employed in those claims to define the substituent in the 3-position of the molecule, are "beyond the scope of the disclosure" in appellants' specification, having found that the disclosure was not "sufficiently representative to support the breadth of the claims." The board agreed.

Appellants disagree with that position, and contend that the following portion of their specification, which describes the aldehyde reactants employed to introduce the 3-substituent, provides sufficient support for claims 15 and 16:

* * * Among the suitable aldehyde reactants may be mentioned: *aralkanals*, particularly *mononuclear* ar (*lower* alkanals), such as phenylacetaldehyde, α-phenylpropionaldehyde, β-phenylpropionaldehyde, β-phenyl-*n*-butyraldehyde, *o*, *m*, and *p*-tolylacetaldehyde [and] 6-phenylcaproaldehyde; * * * [and] diarylalkanals, particularly *mononuclear* diaryl *lower* alkanals, such as diphenylacetaldehyde, β, β-diphenylpropionaldehyde, and α-phenyl-β-phenylpropionaldehyde. * * (Emphasis added).

We note, as did the board, that the alkyl radicals provided by the above aldehydes all fall within a limited range, none exceeding five carbon atoms, and that the aryl radicals provided by the above aldehydes are all phenyl or hydrocarbon substituted phenyl.

Appellants have not defined the intended scope of the terms "aralkyl" and "mononuclear aralkyl" in their specification. Under the circumstances, we must give those terms their broadest possible meaning in determining just what appellants are claiming as the subject matter which they regard as their invention.[3] See In re Sus, 306 F.2d 494, 49 CCPA 1301.

■ The terms "aralkyl" and "mononuclear aralkyl" are broad terms, but are not objectionable for that reason alone if those terms are supported by the specification and properly define the subject matter described therein. Consonant with the purpose behind section 112, the *invention claimed* should be no broader than the *invention set forth* in the written description contained in the specification.

---

3. For that purpose, we adopt the definition of "aryl" set forth in the authorities listed in footnote 3 of In re Sus at 306 F.2d 498, 49 CCPA 1306. In addition, we find the following definitions of "alkyl," "alkane" and "aralkyl" in the same authorities:

alkyl. A paraffin hydrocarbon radical which may be represented as derived from an alkane by dropping one hydrogen from the formula. Examples are ethyl, $C_2H_5-$; propyl, $CH_3CH_2CH_2-$; isopropyl, $(CH_3)_2CH-$; etc. * * * (The Condensed Chemical Dictionary. Sixth Ed., p. 41).

alkane. 1. General term for a saturated aliphatic hydrocarbon; a paraffin hydrocarbon. Its formula is $C_nH_{2n}+_2$. Examples range from methane, $CH_4$, through eicosane, $C_{20}H_{42}$, and higher homologs. * * * (The Condensed Chemical Dictionary, Sixth Ed., p. 39).

alkyl. * * * A monovalent radical derived from an aliphatic hydrocarbon by removal of one hydrogen atom, as methyl–, ethyl–, or propyl–. Their general formula is $C_nH_{2n}+_1-$. * * * (Hackh's Chemical Dictionary, Third Ed., p. 33).

aralkyl. * * * A radical in which an aryl group is substituted for a hydrogen atom of an alkyl. * * * (Hackh's Chemical Dictionary, Third Ed., p. 71).

We think the terms "aralkyl" and "mononuclear aralkyl" as used here are broader than the invention described in the specification. Manifestly, the terms "aryl" and "alkyl" encompass far more than the phenyl groups and carbon chains of less than five carbon atoms, respectively, which appellants have set forth in their specification. The term "aryl," for example, is broad enough to include multi-ring compounds, mention of which we do not find in appellants' specification. Similarly, the term "alkyl" is sufficiently broad to include radicals derived from paraffin hydrocarbons of a chain length far greater than five carbon atoms. In their specification, appellants themselves characterize the aldehydes they employ to synthesize the present compounds as "lower alkanals." As we stated in In re Cavallito, 282 F.2d 363, 48 CCPA 720:

> * * * Moreover, the selection of the examples and other exemplary material used as the disclosure to support a claim must be adequately representative of the area covered by it. In some instances a limited disclosure which is typical of various areas covered by a claim may be of greater value in determining the patentable characteristics of the claimed compounds than a more extensive disclosure would be if related only to a limited portion of the area.

Thus it seems to us that one skilled in the art would learn from the specification that certain aryl or alkyl radicals would be suitable for the purposes of the invention, not that any aryl radical or alkyl radical would be so suitable. In re Sus, supra. There is no question but that the disputed terms—though they are the same as the terms used in the specification—are so broad that they embrace subject matter not described to be appellants' actual invention by means of adequate representative examples. See also In re Holmen, 347 F.2d 852, 52 CCPA 1626; In re Cavallito, 306 F.2d 505, 49 CCPA 1335.

We affirm the rejection of claims 15 and 16 under section 112.

### The Rejection on Margerison

The issue presented by the Patent Office rejection of claims 2–4, 15 and 16 as "unpatentable over" the Margerison patent is one which, insofar as we are aware, has never been before this court in the present context.

The Margerison patent 3,095,446, issued June 25, 1963, on an application filed May 12, 1959, relates to processes for the preparation of certain 7-sulfamyl-3, 4-dihydro-1, 2, 4-benzothiadiazine-1, 1-dioxides of the general formula

The generic formula of Margerison reproduced above includes within its scope the compounds of appellants' claims, and a hindsight selection from the column-long list of appropriate substituents disclosed by Margerison[4] yields the compounds of appellants' narrowest claims, claims 3 and 4. One of the processes disclosed by the Margeri-

4. In the patent, $R_2'$ and $R_2''$ are said to be "hydrogen or lower alkyl;" $R_3$ "stands primarily for halogen, e. g. fluorine, bromine, iodine or particularly chlorine" but may also represent "lower alkyl, e. g. methyl or ethyl, or halogeno-lower alkyl, e. g. trifluoromethyl." According to the patent, $R_1$ may represent a wide variety of substituent groups, among which are hydrogen, lower alkyl, substituted lower alkyl, lower alkenyl, cycloalkyl, cycloal-kenyl, carbocyclic, aryl, substituted carbocyclic aryl, carbocyclic aryl-lower alkyl, heterocyclic aryl or heterocyclic-lower alkyl. Various specific groups are disclosed to exemplify each of the above generic terms, the patentee stating that "carbocyclic aryl-lower alkyl may be represented by monocyclic carbocyclic aryl-lower alkyl, e. g. benzyl or 2-phenylethyl." (Emphasis supplied)

son patent for preparing the compounds appears identical to appellants' process in all material respects. The compounds so disclosed are said to be useful as diuretic agents to relieve excess water and/or salt retention, or to relieve states of hypertension.

The examiner noted that the Margerison patent specification states that it is "a continuation-in-part application of our application Serial No. 763,806, filed September 29, 1958 (now abandoned)." (Emphasis added). The '806 application reproduced in the record before us discloses several closely related processes for preparing compounds having a generic formula which, for purposes here, may be said to be identical to that disclosed in the issued patent. A comparison of the generic disclosure and the nature of the substituents on the benzothiadiazine nucleus as disclosed in the Margerison patent with the abandoned application reveals them, in the words of the board, "to be strikingly parallel." Thus, in both the Margerison patent and abandoned application, $R_2'$ and $R_2''$ may be hydrogen; and $R_3$ and $R_1$ may be, among many other things, trifluoromethyl and benzyl or 2-phenylethyl, respectively. It seems to be generally agreed between appellants and the Patent Office that the appellants' *process* for preparing the compounds is not described in the '806 application.[5]

While the examiner rejected all claims as "unpatentable over" the Margerison patent, it seems clear from his Answer that he at least[6] does not rely on anything described above as being disclosed either in the Margerison patent or in the abandoned application for evidence that appellants are not the first inventors of the presently claimed subject matter. Rather, the examiner turned to Example 2 of the abandoned '806 application, which discloses the preparation of 6-chloro-7-sulfamyl-3,4-dihydro-2:H [1, 2, 4]-benzothiadiazine by first reacting 5-chloro-4-sulfamyl-aniline-2-sulfonyl chloride with paraformaldehyde to form 5-chloro-4-sulfamyl-N- chloromethylaniline-2-sulfonyl chloride, and then reacting the latter compound with ammonia to yield the desired product. The last paragraph of Example 2 was particularly relied upon by the examiner. It reads:

Other sulfamyl-aniline-2-sulfonyl chlorides, aldehydes or amines may be used in the above process; for example, 5-methyl-4-sulfamyl-aniline-2-sulfonyl chloride, *5-trifluoromethyl-4-sul-*

---

5. The Margerison patent and abandoned application *do* contain common disclosure of at least one process for preparing compounds of the generic formula mentioned

earlier. In that process, a dichlorosulfonyl aniline of the formula is treated with an aldehyde of the formula $R_1CHO$ in the presence of hydrogen chloride. That product is reacted subsequently with an amine of the formula $R_2'NH_2$ (such as

$NH_3$) to effect ring closure. The product of the first step of the above process, where paraformaldehyde is employed as the aldehyde reactant, is the subject of the claims of the Margerison patent and has the formula

6. Appellants, apparently in an abundance of caution, contend that the generic disclosures of the Margerison patent and abandoned application are "too broad and diffuse" to suggest appellants' invention. They assert error in what they believe is a contrary holding of the board. Upon review of the record, we are inclined to agree with the solicitor that the aforestated issue to which appellants direct their arguments "does not exist for the reason that the rejection of the appealed claims is not based on the broad generic disclosures in the Margerison et al. patent and abandoned application."

*famyl-aniline-2-sulfonyl choride* or 5-chloro-4- (N-methyl-sulfamyl)- aniline-2-sulfonyl chloride may replace the starting material in the above reaction; dimethoxymethane, acetaldehyde, propionaldehyde, benzaldehyde or *phenylacetaldehyde* may substitute paraformaldehyde and methylamine may replace *ammonia.* (Emphasis added)

It is the examiner's position that utilization of the italicized reagents appearing in the above paragraph in the process described in Example 2 results in the compound of appellants' claim 3. The compound of claim 4 was regarded as obvious in view of the same disclosure since it "represents a homolog of claim 3 and has the same utility." Claims 2, 15 and 16, which are generic to claim 3, were carried along with the rejection of claim 3.

One matter must be clear before we move to a more detailed discussion of the Patent Office position and appellants' contentions. Example 2, and particularly the last paragraph thereof which is relied on by the Patent Office in rejecting the claims, is present only in the abandoned '806 application. Example 2 is not present—explicitly, that is—in the specification of the issued Margerison patent.

The examiner recognized that Example 2 of the '806 application was not part of the express disclosure of the Margerison *patent,* observing that the patent "has not carried forward the disclosure that is being relied upon by the Examiner as the prior art." Nevertheless, he was of the view that "the abandoned application has been incorporated by reference in the patent." He quite evidently relied on the aforementioned paragraph of the Margerison patent, which states that it is "a continuation-in-part" of the '806 application. "In effect," said the examiner, the compound of claim 3 "has been described in the issued patent. 35 U.S.C. § 102(e)." He regarded the effective date of that disclosure of the '806 application to be its filing date, 29 September 1958, some ten months before appellants filed the application here on appeal.

The board agreed in substance with the examiner's reasoning, adding that

\* \* \* the subject matter of Serial No. 763,806 has been carried forward into Patent No. 3,095,446, and the parent application may properly be referred to for further elucidation or exemplification of the subject matter found in the issued patent. So far as the final products are concerned, the patent and its parent application are as one. \* \* \*

Here, as below, appellants present four arguments as to why Example 2 of the abandoned application should not be used to reject the claims under 35 U.S.C. §§ 102 and 103. One of the arguments relates to the *sufficiency* of the disclosure in Example 2 to anticipate or render obvious the subject matter of claims 3 and 4, appellants urging that there is no express disclosure of any compound within the scope of the claims and that, in any event, the disclosure is in fact inoperative to yield the compound of claim 3. The remaining three arguments are concerned with the *legal availability* of Example 2 as evidence of prior art. Appellants first contend that they are entitled to the benefit of two British applications, each having a filing date earlier than the filing date of the Margerison abandoned application, under the provisions of 35 U.S.C. § 119. Second, they urge that the disclosure of the abandoned application becomes available as a reference, if at all, only as of the issue date of the Margerison patent (25 June 1963), the first time the public had access to it (see 35 U.S.C. § 122) and long after appellants filed their application in the United States. Finally, appellants argue that the disclosure of Example 2 of the abandoned application is not carried forward to and is not common with the disclosure of the Margerison patent— rather, it was omitted when the application upon which the patent issued was filed. It is their position that 35 U.S.C. § 102(e) is "not applicable" here since "the invention" disclosed in Example 2

of the Margerison '806 application was not "described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent" as required by § 102(e). In effect, appellants state, the examiner and board have relied upon the disclosure of the abandoned application *per se*, use of which, they contend, is proscribed by well-established principles of law.

The primary issue before us is whether the subject matter of claim 3 *is* "described" in the Margerison patent by virtue of its asserted appearance in Example 2 of the abandoned parent application.

■■ It is, of course, incontrovertible that a description of an invention of another in an application filed before an applicant's date of invention, upon which application a patent is issued, constitutes a bar to the issuance of a valid patent for the same invention, Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), codified by § 102(e), or obvious variations thereof, Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965). It is also well settled that where a patent purports on its face to be a "continuation-in-part" of a prior application, the continuation-in-part application is entitled to the filing date of the parent application as to all subject matter *carried over* into it from the parent application, whether for purposes of obtaining a patent or subsequently utilizing the *patent* disclosure as evidence to defeat another's right to a patent. 35 U.S.C. §§ 102(e), 120; Goodyear Tire & Rubber Co. v. Ladd, 121 U.S.App.D.C. 275, 349 F.2d 710 (1965), certiorari denied 382 U.S.

973, 86 S.Ct. 536, 15 L.Ed.2d 465; Asseff v. Marzall, 88 U.S.App.D.C. 358, 189 F.2d 660 (1951), certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626; In re Switzer, 166 F.2d 827, 35 CCPA 1013.[7]

The question is—what has been "carried over" from the Margerison '806 application to the application on which the Margerison patent issued? Although the board stated that "the subject matter" of the '806 application "has been carried forward" into the patent, it would seem that it was referring to the broad, *generic* disclosure of the compounds and perhaps the other disclosure common to the two applications which we have outlined earlier in this opinion. The examiner stated, and the board and solicitor do not disagree, that the patent "has not carried forward the disclosure that is being relied upon by the Examiner as the prior art." We agree with this conclusion of the examiner. Thus it is apparent that the claimed subject matter has not literally or explicitly been "described" in the patent upon which the rejection is predicated. Nor is the factual situation presented here by the '806 application and Margerison patent comparable to the factual situations present in the *Goodyear, Asseff* and *Switzer* cases, supra, since the patent and '806 application are not "as one" insofar as the subject matter of Example 2 is concerned.

Those observations do not dispose of the problem before us, however. The examiner has stated that the disclosure of Example 2 of the abandoned '806 application has been "incorporated by reference" into the patent disclosure. The inference we draw from the examiner's and board's statements is that they view the patent specification acknowledgment

---

7. In *Switzer*, this court affirmed a rejection of certain claims directed to the use of carbon black in a resin as obvious in view of several references, one of which described the use of titanium dioxide in a resin. The court stated:

The examiner correctly held that * * * [appellants] did not antedate or avoid the three abandoned applications which were referred to in the Hempel patent as co-pending applications of which the patent application was a continuation-in-part. Those earlier applications are part of the record herein and two of them disclose the use of the titanium dioxide *just as the patent does.* (Emphasis added)

that it is a "continuation-in-part" of the abandoned '806 application as accomplishing incorporation of the entire disclosure of the abandoned application, including Example 2, into the disclosure of the patent, with the result that appellants' invention is described, if not explicitly, at least implicitly in the Margerison patent.

■ We recognize that, subject to compliance with 35 U.S.C. §§ 112 and 132, the disclosure in a patent application may be deliberately supplemented or completed by reference to disclosure set forth in other patents, National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224, 230, (6 Cir., 1959); In re Chaplin, 168 F.2d 85, 35 CCPA 1155; In re Stauber, 45 F.2d 661, 18 CCPA 774, to disclosure in earlier or concurrently filed copending applications, In re Ziegler, 363 F.2d 888, 53 CCPA 1457; In re Fried, 329 F.2d 323, 51 CCPA 1118, which may have become abandoned, In re Heritage, 182 F.2d 639, 37 CCPA 1109, or, in general, to "disclosure which is available to the public," In re Heritage. As the expression itself implies, the purpose of "incorporation by reference" is to make one document become a part of another document by referring to the former in the latter in such a manner that it is apparent that the cited document is part of the referencing document as it it were fully set out therein.

■ Here, however we do not think that the single sentence by which Margerison refers to his earlier application— "The present application is a continuation-in-part application of our application Serial No. 763,806, filed September 29, 1958 (now abandoned)"—is sufficient in and of itself to render Example 2 of the abandoned application part of the patent disclosure as if fully set out therein. There is little in the term "continuation-in-part" [8] which would suggest to the reader of the patent that a dis-

closure of the nature of Example 2 is present in the earlier application and that it should be considered a part of the patent specification. Thus we cannot agree that the subject matter of claim 3 is tacitly "described" in the Margerison patent within the meaning of § 102(e).

The examiner, as well as the solicitor, rely on this court's decision in In re Heritage to support the view that the manner in which the Margerison patent refers to the prior abandoned application here amounts to an incorporation by reference in the patent of the entire disclosure of the abandoned application. We do not see that decision as supporting that proposition. There this court approved the board's finding that a Finck patent employed as a reference had referred to an earlier, copending, subsequently abandoned application in a manner to make it "part of the patent disclosure." The court stated:

> While the Primary Examiner specifically stated that the copending application of Finck, referred to in his patent and subsequently abandoned, was not relied upon, the Board of Appeals held that the disclosure by reference to the abandoned application was part of the patent disclosure. * * *
> * * * * * *
> We do not deem it necessary to refer to the disclosure of the abandoned application referred to in the Finck patent, although, in our opinion, such reference was properly discussed in the board's decision. There can be no question but that in a patent application, the disclosure thereof may be supplemented by reference to another patent. In re Stauber, 45 F.2d 661, 18 C.C.P.A. (Patents) 774.
> It must be remembered that the abandoned application by itself was not cited by the board as a reference, and since it was referred to by the pat-

8. The Manual of Patent Examining Procedure. section 201.08, states:
   A continuation-in-part is an application filed during the lifetime of an earlier application by the same applicant, re-

peating some substantial portion or all of the earlier application *and adding matter not disclosed* in the said earlier case. (In re Klein, 1930, C.D. 2; O.G. 519.)

entee in his specification, it surely became part of the disclosure set out therein. Furthermore, it is sound law, in our opinion, that any reference to a disclosure which is available to the public is permissible. The Hamilton Laboratories, Inc. v. Massengill, 6 Cir., 1940, 111 F.2d 584, certiorari denied 311 U.S. 688, 61 S.Ct. 65, 85 L.Ed. 444.

Counsel for appellant in their brief stated that the abandoned application was not open to the public. However, the record shows and after suitable petition for access had been made such access had been granted.

While the manner in which the Finck abandoned application disclosure was incorporated by reference to supplement the patent disclosure is not entirely clear from the *Heritage* opinion, the manner is clearly reflected in the decision of the Board of Appeals in Ex Parte Heritage, 77 USPQ 179,[9] which involved a Heritage application related to that appealed to this court. It should be apparent that the court, in stating that the Finck patent "referred to" the abandoned application, did not intend to imply that *any* manner of reference to an earlier application was sufficient to incorporate the entire disclosure or any part thereof by reference into the patent. We think the manner in which the Finck patent "referred to" and thereby incorporated the abandoned Finck application as part of the disclosure is clearly distinguished from the present situation. The remaining cases cited by the solicitor here, all of which cite and follow Heritage—Rolls Royce Ltd., Derby, England v. United States, 339 F.2d 654, 168 Ct.Cl. 367 (1964)[10]; Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., D.C., 218 F.Supp. 1, 31, aff'd 327 F.2d 497 (4 Cir., 1964); B. F. Goodrich Co. v. U. S. Rubber Co., D.C., 147 F.Supp. 40, 58,[11] aff'd 244 F.2d 468 (4 Cir., 1957)—appear to be similarly distinguishable.

9. The paragraphs of the board opinion at 77 USPQ 181, 182, appearing between headnote [1] and [2], as well as its decision on petition for reconsideration, are identical to those in the decision of the board appearing in the record in In re Heritage. The Finck patent stated, inter alia:

> The invention also is an improvement over my former invention disclosed in my co-pending application filed December 27, 1927, Serial #242,776, *which shall be referred to more particularly hereafter.*
>
> *     *     *     *     *
>
> In introducing the loose insulating material into the insulation space 4 through the openings 8 *there is preferably employed the air pressure process of filling disclosed in my pending application aforesaid. As there disclosed* the air pressure, in a process of this kind, is utilized as a means to pack the material into the insulation space at a proper density.
>
> *     *     *     *     *
>
> Another embodiment of my present invention consists in the use of the above method of introducing and fixing loose, fibrous materials within an insulation space of a complete structure, such as a refrigerator, formed by inner and outer spaced apart walls *as considered in my former application.* * * * (Emphasis added)

10. There the court analyzed the reference patent as follows:

> *   *   * As we have already pointed out, this 2,497,667 patent is a process patent but it refers to the 711,204 application in discussing the alloys which might be used in the process. *   *   * The patent stated:
>
> An alloy *as proposed* by the applicants and Marcus Allan Wheeler *in our patent application* filed November 20, 1946, Ser. No. 711,204, containing [certain elements] *   *   * [w]hen given first preliminary heat treatment *according to this invention* followed by the said proposed heat treatment *   *   * gave under the same test conditions a life of 72 hours. (Emphasis added)

The majority of the court concluded that "the full disclosure of the 711,204 application is as much a part of the disclosure of the 2,497,667 patent as if fully set out therein," thus making available as apparent prior art certain other alloys described *only* in the 711,204 application.

11. The court quoted the language of the reference patent to Bull at 147 F.Supp. 52, footnote 26:

> In the co-pending application of McNeill and Eger, Serial No. 647.730, filed Dec. 17, 1932, there is [sic] shown and described tires which are adapted to cooperate directly with such rims, and

Appellants concede, subject to their alternative arguments as to the sufficiency of the disclosure in Example 2 and to whatever rights they may have under 35 U.S.C. § 119, that:

> If Example 2 of the abandoned Margerison application were subject matter that was carried forward into the application that matured into the Margerison patent, appellants would readily concur in the Board's holding.
>
> * * *

That is not the case here, however. It seems to us that the sine qua non of § 102(e) and the *Milburn* case is that, consistent with the gain to the public which the patent laws mean to secure, a *patent must issue* which contains, explicitly or implicitly, the description of an invention which is to be relied on to defeat a later inventor's patent rights. It does not appear that the patentee here has done "all that he could do to make his description public," *Milburn*, supra, for the language Margerison employs is not sufficient to incorporate the description of his earlier application into the patent and the description which the Patent Office relies upon appears only in the earlier application. Upon the facts here, we think it would require an unreasonable extension of the language of § 102 (e), and of the *Milburn* decision it codifies, to find that the subject matter of claim 3 is "described" in the patent issued to Margerison. That conclusion disposes of the rejection of claims 2 and 4 as well.

The question remains whether the disclosure in the abandoned '806 application is otherwise available as evidence of prior knowledge under 35 U.S.C. § 102(a). There it is provided that a person shall be entitled to a patent unless "the invention was *known* or used by others in this country * * * before the invention thereof by the applicant for patent." The "knowledge" required by that provision to defeat another's patent rights has long been interpreted to mean *public* knowledge.[12] See In re Hilmer, 359 F.2d 859, 878–879, 53 CCPA 1287; In re Borst, 345 F.2d 851, 52 CCPA 1398, certiorari denied Borst v. Brenner, 382 U.S. 973, 86 S.Ct. 537, 15 L.Ed.2d 465; In re Schlittler, 234 F.2d 882, 43 CCPA 986, and cases cited therein. Consistent with those rulings, we think the disclosure in Example 2 of the abandoned Margerison application becomes available as evidence of prior knowledge, if at all, only as of the issue date of the Margerison patent, as public access to the abandoned application is then provided for by Patent Office Rule 14(b).[13] Since appellants' filing date is well before the issue date of the Margerison patent, we need not consider what weight should be given to Example 2 in the abandoned application

---

provide a fluid tight seal without the use of inner tubes. * * *

and later stated, 147 F.Supp. 58:

* * * that part of * * * [defendant's] work represented by patent application of defendant's employees McNeill and Eger, and a patent granted * * * to defendant's expert Dr. Bull, became part of the public domain on the issuance of the Bull patent. * * *

The court concluded that the McNeill application was [at footnote 39]:

* * * available as evidence of prior knowledge. 35 U.S.C. § 102(a). Moreover, having been referred to by Bull in his specifications in Patent No. 1,966,-580, it became part of the disclosure set out therein. * * *

12. Inasmuch as § 102(e) makes a description in a *patent* available as evidence of prior knowledge as of the effective filing date of the application on which the pat-

ent issues, it should be regarded as an exception to the general rule that prior knowledge must be public in order to defeat another's patent rights. See, in general, In re Land, 368 F.2d 866, 877–878, 54 CCPA 806; In re Hilmer, infra; 35 U.S.C. § 122.

13. Rule 14(b) reads:

Abandoned applications are likewise not open to public inspection, except that if an application referred to in a United States patent is abandoned and is available, it may be inspected or copies obtained by any person on written request, without notice to the applicant. Abandoned applications may be destroyed after twenty years from their filing date, except those to which particular attention has been called and which have been marked for preservation. Abandoned applications will not be returned.

by itself as evidence of prior knowledge or whether it is available as evidence at all. See, generally, The Corn-Planter Patent, 23 Wall. (90 U.S.) 181, 210–211, 23 L.Ed. 161 (1874); Alexander Milburn Co. v. Davis-Bournonville Co., supra; Smith v. Hall, 301 U.S. 216, 227, 57 S.Ct. 711, 81 L.Ed. 1049 (1936); In re Schlittler, supra; Patent Office Rule 108. But also see In re Borst, supra. It should also be apparent that we have not found it necessary to discuss appellants' arguments concerning the *sufficiency* or operativeness of the disclosure in Example 2 of the '806 application, or their rights under 35 U.S.C. § 119.

The decision of the board is affirmed with respect to claims 15 and 16 and is reversed with respect to claims 2, 3 and 4.

Modified.

MARTIN, J., participated in the hearing of this case but died before a decision was reached.

SMITH, Judge (concurring).

I agree with the reasoning and conclusion of the majority. Because of the importance of the issue presented by the Patent Office's use of the Margerison patent in the present circumstances, I should like to cite the following material as of interest and relevancy to that issue, in addition to the cases and materials appearing in the majority opinion.

I. Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406, 416 (6th Cir., 1964);

Monarch Marking System Co. v. Dennison Mfg. Co., 92 F.2d 90, 92–93 (6th Cir., 1937);

Interurban Ry. & Terminal Co. v. Westinghouse Electric & Mfg. Co., 186 F. 166, 168 (6th Cir., 1911);

United States Blind Stitch Mach. Corp. v. Reliable Mach. Works, Inc., 67 F.2d 327 (2nd Cir., 1933);

Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 40 F.2d 460 (2nd Cir., 1930);

Fessenden v. Wilson, 48 F.2d 422, 18 CCPA 1171;

In re Tenney, 254 F.2d 619, 45 CCPA 894.

II. Decisions of the Board of Appeals
Ex Parte Burgess, 152 USPQ 711, 712

Ex Parte Thelin, 152 USPQ 624

Ex Parte Shacter, 139 USPQ 380

Ex Parte Tummers, 137 USPQ 444

Ex Parte Lipkin, 129 USPQ 427

Ex Parte MacDonald, 113 USPQ 262

Ex Parte Gresham, 90 USPQ 350

Ex Parte Jordan, 90 USPQ 41

Ex Parte Peterson, 63 USPQ 99

Ex Parte Clifford, 49 USPQ 152

Ex Parte Caldwell, 32 USPQ 129

III. Literature
Orenbuch, "Abandoned Applications as Prior Art," 45 J.P.O.S. 613 (August 1963)

Randle, "Patent Invalidity: Prior Knowledge as Evidenced by an Unpublished Written Description," 45 J.P.O.S. 97 (Feb. 1963)

Jacobs, "Abandoned Applications as References," 44 J.P.O.S. 184 (March 1962)

Orenbuch, "The Doctrine of Incorporation by Reference in the Law of Patents," 43 J.P.O.S. 467 (July 1961)

Levy, "*Offensive* Defensive Patent Applications," 39 J.P.O.S. 159 (March 1957)

Jones, "Ex Parte Heritage (vs. Finck)", 33 J.P.O.S. 729 (Oct. 1951)

Federico, "The Use of Abandoned Applications as References," 28 J.P.O.S. 160 (March 1946)

Osheroff, "The Use of Abandoned Applications Referred to in a Patent as a Reference," 19 Geo. Wash.Law Review 73 (Oct. 1950)

Manual of Patent Examining Procedure, §§ 901.02, 901.01.